ADAMS et al. v. KEHLOR MILLING Co. et al.

(Circuit Court, E. D. Missouri, E. D. June 15, 1888.)

1. CORPORATIONS—INSOLVENCY—PREFERENCES BY DIRECTORS OF RELATIVES.

The directors of a corporation, known to be insolvent, granted a preference to the estate of a deceased director and president of the corporation. The board. at the time of the preference, consisted of but three persons, two of whom were brothers of the deceased director, and one of whom was agent of the deceased's estate. and voted his stock at corporate meetings. Held, that the preference so granted was illegal. and that an unsecured judgment creditor of the corporation, complaining of such preference, was entitled to recover of the directors such percentage of his debt as he would have received if the sum wrongfully paid by way of preference had been divided pro rata among all the unsecured creditors.[1]

2. SAME—INSOLVENCY—DISSOLUTION.

A corporation which, though insolvent, continues to hold meetings and transact business, and against which suit is pending and judgment obtained, is not dissolved within the meaning of Rev. St. Mo. § 744, providing that upon the dissolution of a corporation the president and directors or managers shall be trustees to settle its affairs.

In Equity.

Rev. St. Mo. § 744 provides that "upon the dissolution of a corporation * * * the president and directors or managers of the affairs of said corporation at the time of its dissolution * * * shall be trustees of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

Mills & Flitcraft, for complainants.

G. B. Burnett and Dyer, Lee & Ellis, for defendants.

THAYER, J. 1. Under the testimony in this case it cannot be said that the Kehlor Milling Company had become dissolved on June 1, 1885, within the meaning of section 744, Rev. St. Mo., and that the directors of the company then became statutory trustees of its assets by force of the statute. Insolvency alone does not work a dissolution of a corporation. Foster v. Planing-Mill Co., 92 Mo. 87, 4 S. W. Rep. 260; 2 Mor. Priv. Corp. § 787, and cases cited; Manufacturing Co. v. Importing Co., 30 Fed. Rep. 864. The Kehlor Milling Company continued to hold meetings and transact business of various kinds for several months after June 1, 1885. A suit was pending against it at that time, in behalf of com-

[1] See note at end of case.

plainant, and judgment was obtained against it after that date. It must accordingly be held that it had not been dissolved in a legal sense, and that a practical dissolution had not taken place by a failure on its part to exercise its corporate functions. It follows therefore that section 744 of the Revised Statutes of Missouri does not affect the case, and that the liability of the directors must be determined solely with reference to the general rules of law governing the conduct of directors and managers of corporations.

2. The only question in the case involving any doubt or difficulty is whether the directors of the corporation against whom this bill is filed, acted lawfully in giving a preference to the estate of J. C. M. Kehlor in the sum of $21,500, which the milling company appears to have owed him at the date of his death. There seems to be no occasion to criticise the conduct of the directors in other respects; but, according to the view the court has taken of the case, the question last mentioned must be answered in the negative for the following reasons: J. C. M. Kehlor, in his life-time, had been a director in the corporation, and also its president and its largest as well as most influential stockholder. At various times he had loaned the milling company $21,500, which was unsecured at the date of his death. On the death of J. C. M. Kehlor, J. B. M. Kehlor, who was also a director, succeeded to the management of J. C. M. Kehlor's interest in the corporation, and was elected president in his stead. It became apparent to him and the other directors very soon after June 1, 1885, that the company was insolvent, and must liquidate its affairs and suspend business, and steps in that direction were at once taken. Thereafter certain personal property of the company was pledged, and money to the amount of $5,000 was raised and applied on the debt due to J. C. M. Kehlor's estate. Subsequently, at a meeting of the board at which only J. B. M. Kehlor and D. M. Kehlor (both brothers of the deceased) were present, a resolution was passed to make the balance of the debt due the deceased to-wit, $16,500, a mortgage lien on the mill and real estate of the company, and papers to that effect were shortly afterwards executed. Thereafter the mill and real estate of the company were sold by order of the board to J. B. M. Kehlor for the sum of $500, subject to incumbrances then existing on the property to the amount of about $60,000, including the mortgage in favor of J. C. M. Kehlor's estate. This transaction exhausted the company's assets, leaving the complainants' claim in the sum of $1,237 for over-advances made on consignments, which was then in litigation, wholly unpaid. During the period covered by these transactions, from June to December, 1885, which resulted in giving the unsecured claim of J. C. M. Kehlor in the sum of $21,500 a preference over other unsecured claims, the corporation was evidently insolvent, and that fact was known to the directors. During that period the board consisted of only three persons,— two of whom were brothers of J. C. M. Kehlor, and one of whom acted as agent of his estate, and voted the stock by it held in the company. I have no doubt that J. B. M. Kehlor paid for the company's mill and real estate as much as it was fairly worth, and perhaps more

than it would have brought at a forced sale in the open market at that time. The board of directors evidently desired to make the corporate assets pay as much as possible of the corporate indebtedness; but at the same time the evidence unquestionably shows a disposition on the part of the majority of the board to pay the claim of J. C. M. Kehlor in full to the exclusion of other unsecured claims that were equally meritorious. On the facts stated, which are substantially admitted, I am of the opinion that the directors of the milling company violated their duty in giving a preference to the estate of J. C. M. Kehlor.

The case seems to fall fairly within the rule which prohibits directors, when a corporation is insolvent and about to go into liquidation, from preferring debts due to themselves from the corporation, or from preferring debts in the payment of which they have a personal interest. It may be conceded that a corporation, though insolvent, has the power to prefer creditors, but the relation which directors bear to the corporation as trustees of its assets is such that they cannot lawfully exercise the power in question for their personal advantage. *Koehler* v. *Black River Falls Co.*, 2 Black, 720; *Drury* v. *Cross*, 7 Wall. 299; *Bradley* v. *Farwell*, 1 Holmes, 433; *Corbett* v. *Woodward*, 5 Sawy. 417–419; *Richards* v. *Insurance Co.*, 43 N. H. 263; *Lippincott* v. *Carriage Co.*, 25 Fed. Rep. 586, and cases cited. It is but an application of the same principle to say that if the directors of an insolvent corporation, in the distribution of its assets, pay a certain creditor in full, to the exclusion of others, the choice ought not to be influenced solely by relationship existing between the directors and the creditor so preferred, or by other considerations of a purely selfish nature. In the present case it was the estate of a deceased director and president of the corporation that was preferred. The majority of the board were brothers of the deceased. One of them was agent for the estate, and controlled and voted its stock at corporate meetings. The interest of the estate was as effectually represented in the board at the time the preference was given, by and through J. B. M. Kehlor, its agent, as it could have been by the deceased director himself. Under these circumstances it must be decreed that the directors are liable to account to the complainants for such a percentage of their demand as they would have realized by a *pro rata* distribution of the assets of the corporation among all its unsecured creditors, after debts secured by mortgage or other liens had been paid, if no preference in favor of the deceased director's estate had been allowed. The unsecured creditors are entitled to share equally in whatever would have remained for distribution after the payment of the mortgage and other liens created in the lifetime of J. C. M. Kehlor. The sum of $21,500 advanced by way of preference should at least have been divided *pro rata* among the unsecured claimants.

There seems to be no occasion to grant any further relief, as no other acts of the board have been called in question. A reference will be ordered to a master to ascertain and report the sum due to the complainants on the basis above indicated.

NOTE.

CORPORATIONS—OFFICERS. A contract between a corporation and individuals, some of whom are directors of the corporation, is voidable, at the option of the corporation. Thomas v. Railroad Co., 3 Sup. Ct. Rep. 315, reversing S. C. 2 Fed. Rep. 877: Meeker v. Iron Co., 17 Fed. Rep. 48; Munson v. Railway Co. (N. Y.) 8 N. E. Rep. 355. A director of a corporation is not absolutely prohibited from entering into a contract with it through his fellow directors; but the validity of such contract depends upon its nature and terms, and the circumstances under which it is made. Hubbard v. Investment Co., 14 Fed. Rep. 675; Thomas v. Sweet, (Kan.) 14 Pac. Rep. 545. Such contract will be enforced when shown to have been made for the benefit of the corporation, and to be just. Trust Co. v. Weed, 2 Fed. Rep. 24. A director of a corporation may become its creditor, and take security for his debt, but his conduct in enforcing such claim will be more closely scrutinized than that of an ordinary creditor, and the proceedings set aside if it appears that he has not acted in good faith as director. Hallam v. Hotel Co., (Iowa,) 9 N. W. Rep. 111. See, also, Garrett v. Plow Co., (Iowa,) 29 N. W. Rep. 395. On a sale of corporate property to one of the directors taking part in the transaction as buyer and seller, it devolves upon the directors to establish the good faith of the transaction, and that the sale produced the full value of the property. Wilkinson v. Bauerle, (N. J.) 7 Atl. Rep. 514. The sale by the president of a national bank, to himself and cashier, of the stock of the bank owned by the bank, may be ratified by the bank or its legal representative; but a sale by himself to the bank, of its own stock, where he acts in the double capacity of seller and buyer, cannot be ratified when the purchase of the stock by the bank is not necessary to prevent loss upon a debt previously contracted. Bundy v. Jackson, 24 Fed. Rep. 628.

Concerning preferences by insolvent corporations, see Pyles v. Furniture Co., (W. Va.) 2 S. E. Rep. 909, and note.