LOWRY BANKING Co. *et al. v.* EMPIRE LUMBER Co. *et al.*

1. As it is the duty of the directors of a corporation to be informed of its condition with reference to solvency or insolvency, they are to be treated as having that knowledge when a mortgage upon its assets is executed with their assent or by their authority.

2. On principles of general law, the directors of an insolvent corporation cannot, to the prejudice of any of its creditors, indemnify by mortgage upon its assets one or more of their own body against loss by reason of his or their suretyship for the corporation upon liabilities already incurred, such indemnity not being made in the execution or performance of any agreement or undertaking entered into at or prior to the time when the liabilities were incurred. Nor can they, in a like case, indemnify a cosurety of one or more of the directors, inasmuch as the indemnity of one surety inures by operation of law to the benefit of the others.

3. In the present case, the mortgages under consideration are not only tainted with self-interest on the part of some of the directors, but no authority to execute them was conferred upon the president and secretary by any corporate act of the board of directors done and recorded as the statute under which the corporation was created expressly prescribes. If one of these infirmities alone would not render the mortgages void, certainly the two together have that effect.

4. The mortgages being void as between the immediate parties thereto, no trust was raised by them in behalf of the creditors of the corporation to whom the sureties sought to be indemnified were bound. Nor can the creditors take anything by subrogation, there being no right acquired by the sureties to be subrogated to.

5. There is no presumption of law that bonds held by a creditor as collateral security are worth their face value. In marshalling the assets of an insolvent debtor, such bonds should be estimated at their true value only, and the creditor should be allowed to prorate with unsecured creditors upon at least the balance of his claim.

6. In the light of all the circumstances, there was sufficient evidence to warrant the report of the master that the corporation was insolvent when the mortgages were executed. Whether that insolvency was actually known or not to the mortgagees, is immaterial.

7. Where, in the administration of the assets of an·insolvent corporation, intervening creditors claim as mortgagees, or as subrogated to the alleged rights of mortgagees, and it appears in evidence that they are creditors, but unsecured by the alleged mortgages, the master, on such a reference as that made in the present case, should report the amounts due them, respectively, so as to enable them to have rendered by the court in their favor the requisite judgments or decree to admit them to participate in the fund, if any, which may be for distribution amongst creditors of their class. This should be done whether there be in their pleadings any express prayer for recognition as unsecured creditors, or not. If one or more of them have judgments previously obtained in a court of this State, and the judgments are in evidence, the amounts and dates of the same should be reported as proved.

May 2, 1893. Argued at the last term.

Before Judge ROBERTS. Dodge superior court. March adjourned term, 1892.

Kiser & Co. and other creditors of the Empire Lumber Co., a corporation of Tennessee but doing business in Georgia, filed their petition in the nature of a general creditors' bill against that corporation; under which a receiver was appointed. Interventions were filed by sundry creditors, in which they attacked two mortgages executed in the name of the corporation to Heath and Anderson, as invalid, because made to hinder and delay creditors, because the president and secretary were not authorized by the corporation to execute them, and because the corporation had no power to make such mortgages. Demurrers and answers were filed by Heath and Anderson; and interventions were filed by the Merchants Bank, the Lowry Banking Company and others,

v 91-40

alleging that they were *bona fide* creditors in amounts secured by the mortgages (these amounts being represented by paper they held on which Anderson was indorser), and praying to be subrogated to the security made by the mortgages. The cause was referred to a master, and he found against the mortgages and against the prayers for subrogation. To his report exceptions were taken, which were submitted to the judge, who approved the report in all things touching the mortgages. For the other material facts see the decision.

R. J. & J. McCAMY, P. L. MYNATT & SON and N. J. HAMMOND, for plaintiffs in error.

DeLACY & BISHOP, HILL, HARRIS & BIRCH, CLAUD ESTES and JOHN L. HOPKINS & SON, *contra.*

LUMPKIN, Justice.

1. A corporation can do nothing except through the individuals who are charged with the management and control of its affairs. In the very nature of things the directors are, of all persons, those who ought to be aware of everything material to a proper discharge by the corporation of its duties and obligations. To permit ignorance in these officials of its affairs would certainly be going to the extreme limit of legal indulgence. Surely they ought to know its condition with reference to solvency or insolvency. This duty is imperative, and therefore for all purposes they are to be dealt with and treated as having absolute knowledge of what the corporation owns and what it owes, whenever a mortgage upon its property is executed with their consent or by their authority. To state this proposition is to argue it, and we have no doubt it will be accepted as correct without question.

2-3. It was insisted that the Empire Lumber Company, under its charter, had no authority to make a mortgage at all except for the direct purpose of securing the payment of money borrowed by it in the due course

of business.    In the view we take of the law controll-
ing this branch of the case, it will be unnecessary to
discuss or decide this precise question.    For our pur-
pose, it may be assumed that this corporation had the
general power to execute mortgages, and could make a
mortgage to indemnify an indorser or surety on an in-
debtedness already accrued, and though insolvent, could
thus prefer such surety or indorser, provided the mort-
gage was authorized by proper corporate action, executed
with due regularity, and did not directly or indirectly
operate for the benefit of a director or directors of the
corporation.    An interesting case bearing upon the gen-
eral power of a corporation to make mortgages is that
of Jones v. Guaranty &c. Co., 101 U. S. 622.    In Pyles
v. Riverside Furniture Co. (W. Va.), 2 S. E. Rep. 909, it
was held that an insolvent corporation, having ceased
its business, had the same power as an insolvent indi-
vidual to prefer a creditor in a general assignment of
all its property for the payment of its debts.    We do not,
however, deem it necessary to pursue further this branch
of the question under consideration.

The general statute of Tennessee, under which this
corporation was created and organized, expressly requires
that the board of directors shall keep a full and true
record of all their proceedings.    It does not appear from
the record in the present case that any authority to
execute the mortgages in question was ever conferred
upon the president and secretary of the company by any
corporate act on the part of the directors.    The min-
utes of the corporation, so far as we are informed, do
not show that any action was taken authorizing the
execution of these mortgages.    It is perhaps true that
their execution was authorized by the unanimous con-
sent of all the real stockholders and directors, but this
consent is not evidenced in the manner prescribed by the
law of Tennessee or the charter obtained in pursuance

thereof. If these mortgages had no other infirmity than that arising from the failure of the directors to comply with the provisions of the charter and the law applicable thereto, we are not prepared to say the mortgages for this reason alone would be invalid and void. As to whether or not they ought for this reason to be set aside, much could be said on both sides. Granting, however, for the sake of the argument, that the mortgages, by reason of the fact that they were made with the consent of the directors and stockholders, would be good if executed in favor of persons in no way connected with the corporation, although such consent was not given in the manner prescribed by law and not properly entered upon the minutes of the corporation, the main question at last is: can the mortgages of an insolvent corporation, executed for the benefit of its own directors, be good as against creditors of the corporation? Before entering upon a discussion of this question, it will perhaps be proper to remark that, in our opinion, the record clearly shows that the corporation was insolvent when the mortgages were given, and as already seen, the directors were unquestionably chargeable with full knowledge of this fact.

The mortgage to Heath was made September 23, 1890, and the mortgage to R. A. Anderson was made the 1st day of October, 1890. The indebtedness of the corporation about that time was not less than $500,000, none of which has been paid, and the record contains no hint of any assets other than those covered by the mortgages. Nall, who was the bookkeeper, testified that the failure occurred October 11, 1890. The original bill in this case was filed on that day. The lumber company virtually admits its insolvency at the time the bill was filed, and this being true, it certainly must have been insolvent a few days before that time. None of the answers or interventions filed in the case deny the

insolvency of the corporation, or set up any facts from which solvency could be inferred. There is not the slightest probability that there was any substantial change in the company's financial status or condition during the few days intervening between the execution of the mortgages and the beginning of this litigation. In view of the foregoing, we have no difficulty in reaching the conclusion that the master's report as to the insolvency of the corporation at the time the original bill was filed, is sufficiently supported.

We now return to the discussion of the question last above stated. The mortgage to R. A. Anderson was to indemnify him against loss by reason of his acceptance and indorsement of divers papers amounting to more than $100,000.00, which were held by various banks and persons. The mortgage to Heath was to indemnify and save him harmless as an indorser on four promissory notes amounting to about $40,000.00, upon each and all of which R. A. and J. C. Anderson, directors of the company, were also liable. One of these notes was made by R. A. Anderson, and indorsed by the lumber company, J. C. Anderson, Hightower and Heath. Another was made by J. C. Anderson, and indorsed by the company, R. A. Anderson, Hightower and Heath. The other two were made by an Indiana corporation, and indorsed by the lumber company, both the Andersons, Hightower and Heath. It will therefore readily be seen that upon each and all of these papers, in the event of their payment by Heath, each of the Andersons would be liable to him either in the capacity of maker or as cosurety, for the real legal relation of the several parties above designated as indorsers was merely that of sureties. No additional credit was extended or money advanced to the lumber company because of the execution of these mortgages. The company had already incurred the several debts represented by the papers above

referred to, and had received the benefit of the money raised thereupon, and received nothing more because of executing the mortgages.   Nor had the company made any promise or agreement, at or prior to the time when the liabilities were incurred, to give the indemnity for which the mortgages were afterwards executed.   It was therefore a plain, naked effort by an insolvent corporation to prefer and secure members of its own body against impending loss about to be occasioned by reason of their suretyship for the corporation, or to prefer and secure another who was jointly liable with them, and to whom they would, upon payment by him, become directly liable.   The principle is necessarily the same in both cases, because indemnity of one surety by operation of law inures to the benefit of the other.   If, because of the execution of the mortgage to Heath, anything was saved to him, it would of course result in relieving the Andersons to that extent upon their liability to him. In our opinion, the law forbids such action by a corporation under the facts and circumstances above set forth.

It is asserted in Green's Brice's Ultra Vires, p. 477, that "Directors come within the designation of persons filling a fiduciary relationship"; and in a note on page 479 we find the following language : " The directors of an insolvent corporation, while it is under their management, hold the position of trustees of its assets for the benefit of its creditors.   If they are themselves creditors, they are precluded by their trust from securing to themselves by their official action any preference or advantage over other creditors," citing Bradley v. Farwell, 1 Holmes, 433.   In the notes beginning on page 314 of Field's Ultra Vires, will be found an interesting discussion of the case of Abbott v. The American Hard Rubber Co., 33 Barb. 578, which deals with the power and authority of directors of corporations to contract with themselves, and cites numerous authorities in support

·of the doctrine laid down in the case at bar.   A discussion of the right of creditors of a corporation to follow its assets and have them appropriated to the payment ·of their claims, will be found. in sections 156, 157, of Wait on Insolvent Corporations.   In 2 Morawetz on ·Corp., §787, it is stated that the directors of an insolvent corporation "who originally stood in a fiduciary relation to the company, become placed in a fiduciary relation to its creditors.   The powers of management vested in the directors of an insolvent corporation which has ceased to carry on business, are solely powers to manage the assets in trust for its creditors and for their benefit.   It has been held, therefore, that the directors of an insolvent corporation are bound to manage the remaining assets with strict regard for the interests of its creditors.   ·They cannot give away property gratuitously, or sell it at a sacrifice in the interest of others, even with the consent of the shareholders, or in any manner use their powers for the purpose of obtaining an advantage to themselves."   A well considered case is that of Adams *et al. v.* Kehlor Milling Co. (Mo.), 35 Fed. Rep. 433, wherein Thayer, J., says: " The case seems to fall fairly within the rule which prohibits directors, when a corporation is insolvent and about to go into liquidation, from preferring debts due to themselves from the corporation, or from preferring debts in the payment of which they have a personal interest.   It may be conceded that a corporation, though insolvent, has the power to prefer creditors, but the relation which directors bear to the corporation as trustees of its assets is such that they cannot lawfully exercise the power in question for their personal advantage.   .   .   It is but an application of the same principle to say that if the ·directors of an insolvent corporation, in the distribution of its assets, pay a certain creditor in full to the exclusion of others, the choice ought not to be influenced

solely by relationship existing between the directors and the creditor so preferred, or by other considerations of a purely selfish nature." In that case, a mortgage executed in favor of a creditor who was a brother of two of the directors was set aside on the ground stated, although there was an entire absence of fraud, and there seemed to be no occasion to criticise the conduct of the directors in any other respect. In Beach *et al.* *v.* Miller (Ill.), 14 N. E. Rep. 698, we find the following language: "The officers of a corporation in an insolvent condition cannot make a wholesale distribution of all its assets among themselves to the exclusion of other creditors. This could not be allowed, even though such officers were *bona fide* creditors." See, also, Cook on Stock and Stockholders, §661 *et seq.*; Corbett *v.* Woodward, 5 Sawyer, 404, 417.

We might multiply these citations to an indefinite extent, but the authorities above referred to, in connection with the numerous cases therein cited, will suffice to show how general is the recognition of the doctrine herein announced. We will therefore content ourselves with remarking that a careful perusal of what is said by the leading text-writers on the subject, and a laborious examination of the cases to which they refer, has convinced us that the decided weight of American authority is as indicated. Perhaps the strongest case holding to the contrary is that of Gould *v.* Little Rock &c. Ry. Co. (Ark.), 52 Fed. Rep. 680. One marked distinction between that case and the one at bar is, that the deed of trust made by the corporation for the benefit of directors was the result of regular corporate action; and the same is perhaps true in many of the cases relied on by Judge Caldwell. In so far as the case last cited is to be regarded as authority for the general doctrine that the directors of an insolvent corporation may prefer themselves by mortgage or otherwise, we cannot give the same our ap-

proval.   We think there can be no doubt that the want of proper corporate action, the consequent informal execution of the mortgages given in the present case, and the taint of self-interest on the part of the directors concerned, must, all together, be sufficient grounds for declaring the mortgages void. ·

4. It was insisted, however, that the creditors of the corporation to whom the sureties holding the mortgages were bound could make these mortgages available for their protection.   The mortgages being void as between the immediate parties thereto, we do not think any such result could follow.  It is difficult to conceive how a mortgage void as to both maker and mortgagee could have any validity as to one having only an incidental interest in it, if any interest at all.   It follows, therefore, that no trust could be raised by the·mortgages in question in favor of the Merchants Bank and other creditors of the Empire Lumber Company to whom the sureties sought to be indemnified by the mortgages were liable; and inasmuch as these sureties have no rights whatever under these mortgages, the creditors referred to can take nothing by subrogation.

5. The master held that the bonds of the Empire & Dublin Railroad Company, deposited with the Merchants Bank as collateral security, in the absence of evidence showing their actual value, were worth their face value, and that they were accordingly sufficient to pay the entire debt due this bank.   The court, in approving the report, adopted the master's conclusion on this subject.   Certainly, there is no presumption of law that bonds of any kind are worth their face value or, indeed, any other amount ; and it would in these times, especially as to railroad bonds, be an exceedingly violent presumption that they were worth all they promised to pay.   In marshalling the assets of the Empire Lumber Company, the true value of the bonds referred to should

be ascertained, and that amount only should be charged to the Merchants Bank, which should be allowed to prorate with unsecured creditors upon the balance, at least, of its claims, if such claims are not fully satisfied.

6. It has already been shown that the evidence warranted the report of the master that the Empire Lumber Company was insolvent when the mortgages to Heath and to R. A. Anderson were executed, and also that the latter, being a director, was chargeable with a knowledge of that fact. We think it entirely immaterial whether the insolvency of the corporation was known to Heath or not, the principle of law which we have sought to establish being, that the mortgage to Heath was invalid because it also benefited directors of the corporation. This being the only reason, so far as Heath is concerned, for invalidating the mortgage, his ignorance of the insolvency could not vary the operation of the principle, it not appearing that any money or other thing of value was obtained by the corporation, or anything added to its resources, by reason of the execution of the mortgage to him and as a consideration for the same. In other words, no possible benefit could result to other creditors as a consequence of the making of this mortgage, and the company's assets at that time being trust funds in the hands of the directors for the benefit of all its creditors, these directors could not do an act unlawful in itself which would be valid even in favor of an innocent party simply because he was ignorant of the existence of the facts which made the act illegal. It was not ignorance that misled him, or caused him to do anything to his own injury. His liability was already irrevocably fixed, and the failure of the security by which he hoped to obtain indemnity is simply his misfortune. The disappointment arising upon discovering the invalidity of the security cannot cure the invalidity though it was not known when the

security was taken.   His opinion that the mortgage was good could not make it so, if, in fact, it was bad.   It would certainly be a curious doctrine which would make a void mortgage valid simply because the mortgagee believed it was valid when he took it.

7. The creditors claiming under the mortgages above mentioned were, of course, desirous of having the same established as valid liens in their favor upon the assets of the insolvent corporation.   They knew very well that if successful in so doing, they would occupy a much more advantageous position in the distribution of the proceeds of these assets than if they simply obtained general judgments upon their respective claims.   Consequently it was not in line with the position they assumed to seek recognition as unsecured creditors.   The master having properly refused to allow the mortgages as such, we think it was his duty to have reported the amounts, respectively, due these creditors, so they might obtain from the court the requisite judgments or decree to admit them to participate in the fund, if any there should be, for distribution among creditors of their class. The mere fact that they did not expressly pray for general judgments made it none the less incumbent upon the master to inform the court of the character and amounts of their claims.   The facts were all before him, and he should have furnished the court with all the information necessary to render a final decree fully and fairly adjusting the rights of all parties to the litigation. For this reason, he should also have reported the amounts and dates of all judgments obtained in any court of this State, which were introduced in evidence before him, in order that the court might allow such judgments whatever priority, if any, they were entitled to in the final distribution of the lumber company's assets.

The head-notes and this opinion sufficiently indicate

in what respects the judgment complained of in the bill of exceptions with which we are now dealing has been reversed, and in what respects it has been affirmed.

*Judgment reversed in part, and in part affirmed.*