LEROY R. FOLSOM, Receiver,

*vs.*

CLYDE H. SMITH, et als.

Somerset.    Opinion February 18, 1915.

*Corporation.   Creditors.   Directors.   Foreclosure.   Fraud.   Fraudulent
Misappropriation of Assets.   Insolvency.   Mortgage.   Preference.
Receiver.   Stock.*

1.  A receiver of a corporation, appointed under Public Laws of 1905, Chap. 85,
    as amended by Public Laws of 1907, Chap. 137, succeeds only to the rights of
    the corporation, and is subject to all the equities that could have been invoked
    successfully against the corporation.  He may sue at law or in equity, when-
    ever the corporation itself might have sued, but not where the interests of the
    corporation are not involved.   He does not succeed to the rights of creditors.

2.  A corporation may lawfully keep its bank account in any name it chooses,
    and may adopt and use such name in the signatures upon its checks.

3.  When the directors of a corporation have applied money belonging to it to the
    payment of its overdraft in a bank, for which it was primarily responsible, a
    receiver, under the statute, cannot maintain an action therefor against the
    directors, on the ground that they were guarantors or sureties for the over-
    draft, and that the transaction amounted to a preference of themselves, and
    was fraudulent as to other creditors.   The corporation itself was not wronged.

4.  When the directors of an insolvent corporation sold its assets, partly for cash,
    and partly for capital stock in another corporation, and caused the stock to be
    issued, not to the corporation itself, but to themselves individually, they there-
    by diverted the stock from the corporation to themselves, and became respon-
    sible to the corporation for the value of the stock at the time of its conversion.
    And the receiver of the corporation may maintain an action to recover the
    value.

5.  All the directors of a corporation by whose authority or acquiescence its
    assets have been diverted from the uses of the corporation are liable to the
    corporation, or its receiver, for the consequences of that breach of trust.

6.  Every director of a corporation is bound to know, and is presumed to know,
    its financial condition. .

7.  When a case involving the assessment of damages is reported to the Law
    Court, and the evidence affords insufficient date for such assessment, the Law
    Court will, if justice requires, remand the case for assessment of damages, at
    nisi prius.

On report. Defendants defaulted. Remanded for hearing in damages at nisi prius, on account of stock converted.

This is an action of tort brought by LeRoy R. Folsom, as receiver of the Smith Publishing Company, a Maine Corporation, against Clyde H. Smith, Selden F. Greene, R. C. Brown, J. F. Hill and Edward F. Danforth and Helen Wing Wentworth, both executors of the last will and testament of John P. Clark, deceased, directors in said corporation, for misappropriation of the assets of said corporation. Plea, the general issue. At the conclusion of the evidence, the case was reported to the Law Court upon so much of the foregoing evidence as is legally admissible; the Law Court to render such judgment as law and justice require.

The case is stated in the opinion.

*Fred F. Lawrence,* for plaintiff.

*Merrill & Merrill,* for defendant Smith.

*George W. Gower,* for defendant Greene.

*R. V. Brown,* for defendant Brown.

*Walton & Walton,* for defendant Hill.

*Butler & Butler,* for estate of J. P. Clark.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, C. J.   The plaintiff is the receiver of the Smith Publishing Company, a corporation at one time doing business at Skowhegan. The defendants, Smith, Greene, Hill and Brown, with one Clark, now deceased, were its directors. Clark's executors are made defendant parties. We shall speak of Clark as one of the defendants.

This suit is brought to recover for the fraudulent misappropriation of the assets of the corporation by the defendants for their own benefit, whereby its creditors were deprived of the means of enforcing their claims against the corporation. The case comes up on report.

The salient facts are these. Prior to 1911, the defendants, Smith, Greene, Hill and Clark, were stockholders in, and creditors of, the J. F. Smith Publishing Company. In 1911, they took a mortgage of the property of that corporation, which later during the year they foreclosed. The property of the corporation seems to have been chiefly some printing machinery and paraphernalia, and the subscription lists and good will of a small publication then published by it and issued to subscribers, together with such rights as were inci-

dent to the management and operation of the publishing business and a mail-order business connected therewith. After the foreclosure, the four defendants named appear to have carried on the business for a time as individuals. But on December 13, 1911, they organized a new corporation, called the Smith Publishing Company, with $60,000 capital stock, and conveyed to it the property and property rights which they had received from the J. F. Smith Company. Thereafter the Smith Publishing Company carried on the business. In the new corporation Hill was president, Smith was treasurer, and Smith, Greene, Hill and Clark were the directors, and so continued to the end. Each of the four received $15,000 of the capital stock. Afterwards Hill sold defendant Brown one-sixth of his capital stock. Brown was elected a director, and remained such.

The business did not prosper. And in October, 1912, in accordance with a vote of the directors, the good will, subscription lists, publication rights, advertizing contracts and electrotypes of the corporation were sold to the Pulitzer Company, a New York corporation. The purchase price was $7,500 in cash, and $10,000 in the preferred stock of the Pulitzer Company. The cash was received by Smith, the treasurer. The Pulitzer Company stock was issued, not to the Smith Publishing Company, but to Smith, Greene and Clark individually, and is so held by them to this time, except ten shares which Smith later transferred to Brown. Hill and Brown had before that time ceased to contribute to the growing necessities of the corporation. Previously they had contributed less than the others. And apparently for this reason, by a general understanding, the Pulitzer stock was divided among Smith, Greene and Clark.

In order to understand what was done with the $7,500 cash, it is necessary to go back a little. While the business was being carried on by Smith, Greene, Hill and Clark as individuals, and perhaps earlier, a deposit account was opened with the Skowhegan Trust Company, in the name of "C. H. Smith, special." At the time of the formation of the Smith Publishing Company, this account was overdrawn to the amount of $10,415.13. The Smith Publishing Company from that time on used the same account in the same name. They deposited to the credit of the "C. H. Smith, special" account and checked against it, the deposits in the whole being much more·than the amount of the overdraft at the beginning. But they checked out more than they deposited, and the overdraft gradually grew until

in October 1912 it was about $23,000. When Smith, the treasurer, received the $7,500 cash from the Pulitzer Company, in October, 1912, he deposited it to the credit of the "C. H. Smith, special" account, thereby reducing the overdraft by so much. At the time of the sale, the Smith Publishing Company was unable to pay its debts in the regular course of business, and was, in the eye of the law, insolvent. *Morey* v. *Milliken,* 86 Maine, 564.

In his declaration, the plaintiff sets forth two grounds for recovery, one as to the $7,500 received from the Pulitzer Company, and the other as to the Pulitzer stock. With respect to the Pulitzer cash, he alleges that, having been paid to Smith, the treasurer, with the knowledge and approval of the other· defendants, it became their duty to use it for the payment of their company's debts, and not to prefer themselves, or any of themselves in so doing; but that in disregard of their duty, they applied the money wholly to the payment of the overdraft at the Skowhegan Trust Company, on account of Smith, that the Publishing Company was not in any sense the debtor of the Trust Company, and that the payment was made with the sole intent to relieve Smith from his personal obligation to pay the overdraft, and to relieve the other directors from such duty as might exist on their part to contribute thereto, so as to effect an unlawful preference in favor of the defendants. He alleges also that the action of the defendants was a fraud upon the other creditors.

With respect to the Pulitzer stock he alleges that the defendants knowingly, wilfully and fraudulently caused the certificates of stock to be issued to them as individuals, that they received and have retained them as their individual property, which action was fraudulent as to the creditors of the company.

It will be noticed that action is brought against the defendants, not to recover the money and the stock as the property of the company, but to recover damages which the creditors have suffered by reason of their tortious conduct in misappropriating the money and the stock. It is not alleged that the corporation was defrauded, but that its creditors were. The suit is brought apparently for the benefit of creditors, and not for the benefit of the corporation.

The statute under which the plaintiff was appointed receiver, Public Laws of 1905, Chap. 85, as amended by Public Laws, 1907, Chap. 137, provides that "such receiver shall have power to institute or defend suits at law or in equity, in his own name as receiver, to

demand, collect and receive all property and assets of said corporation, to sell, transfer or otherwise convert the same into cash, and carry on the business of said corporation, as ordered by the court, if it appears for the best interest of all concerned." No special authority is expressly given a receiver to preserve and enforce the rights of creditors, as separate and distinct from the rights of the corporation.

We are aware that there are authorities which hold that a receiver represents the interests of both debtor and creditors, and is a trustee for all parties. See Beach on Receivers, Sec. 264. But the current of authority favors the proposition that a statutory receiver succeeds only to the rights of the defendant in the receivership suit, and is subject to all the equities that could have been successfully invoked against the latter, unless the statute otherwise provides. Beach on Receivers, Sec. 298. The case of *Gilbert* v. *Finch*, 173 N. Y., 455, chiefly relied upon by the plaintiff as authority for the doctrine that a receiver may maintain an action at law against recreant directors for the benefit of creditors is not inconsistent with this conclusion. In that case corporate funds were wrongfully diverted by the directors, and the corporation was wronged. We have here to deal with a statutory receivership. The general scope of the receiver's powers are marked out, and, we think, limited, by the statute. Taking the statute as a whole, we think it was the legislative intent that a receiver should succeed to the rights of the corporation, and not specifically to the rights of creditors, except as the enforcement of the corporate rights may enure to the benefit of creditors. Under this statute, a receiver may sue at law or in equity, whenever the corporation itself might have sued, but not where the interests of the corporation itself are not involved. It may be added that this case does not come within the purview of R. S., Chap. 47, Sec. 89, relating to actions by receivers against stockholders. For these reasons, the declaration is demurrable. It is likewise amendable.

When cases come to the Law Court on report, technical imperfections in pleading are regarded as waived. *Elm City Club* v. *Howes*, 92 Maine, 211; *Rush* v. *Buckley*, 100 Maine, 322; *Hurd* v. *Chase*, 100 Maine, 561; *Proctor* v. *M. C. R. R. Co.*, 101 Maine, 459. And we will proceed to consider the case as if the alleged wrongful acts had been declared to have been to the damage of the corporation.

The plaintiff contends in the first place that the overdraft in the Skowhegan Trust Company was the debt of Clyde H. Smith, and not

that of the corporation, and that application of the Pulitzer Company money in reduction of the overdraft was the diversion of corporate funds to the payment of the private debt of Smith, for which the corporation itself had a right of action against the defendants. If the plaintiff is right as to his premise, his conclusion undoubtedly follows. He bases his contention upon the fact that the overdraft was caused by the payment of checks signed "Clyde H. Smith, special," and upon the principle of law that the primary liability of parties on commercial paper must be determined from the face of the paper itself. He argues that it is not competent to show that a "Clyde H. Smith, special" check was the check of the corporation itself. But the principle relied upon is not applicable in this case. This is not a case between parties to commercial paper. It is not a case calling for the determination of the question whether Clyde H. Smith would or would not have been liable to the holder of such a check. The checks were paid, and the case shows that they were paid on the primary responsibility and credit of the corporation. The corporation might lawfully keep its bank account in whatever name it chose. It might adopt and use such name in the signatures upon its checks. Three of the defendants were directors in the Trust Company, and the conclusion from the evidence is irresistible that when the Trust Company paid the "Clyde H. Smith special" checks, it paid them as the checks of the corporation, and the corporation became indebted to it therefor. So that so much of the overdraft, at least, as accumulated after the Smith Publishing Company was organized was the debt of that corporation. Whether Smith was also liable as guarantor, as is claimed, is immaterial to this discussion.

When therefore these defendants caused the $7500 received from the Pulitzer Company to be deposited to the credit of the "C. H. Smith, special" account in the Trust Company, they thereby reduced the overdraft and paid by so much the indebtedness of the corporation. The money was not diverted from corporate uses. The corporation could not complain of this payment. It could not recover back the money. The receiver, as representing the corporation, has no greater rights. The corporation, even if insolvent, at common law, could lawfully prefer one creditor to another. *Symonds* v. *Lewis*, 94 Maine, 501. So far as the corporation itself was concerned, it was not unlawful for the directors to pay this particular debt, even if thereby they saved themselves as guarantors. Whether

the defendants or any of them were guarantors, and if so, whether the indirect benefit they received by the payment made it an unlawful preference as to creditors, we have no occasion in this case to decide. If creditors were unlawfully affected by this act of the defendants they must seek their remedy in some other proceeding. Their rights in this respect cannot be enforced by the receiver. It follows that the plaintiff cannot recover in this action as for the diversion of the $7500, nor for the alleged unlawful preference.

But the case as to the Pulitzer stock stands on different grounds. We shall not base our decision respecting the stock upon the ground claimed by the plaintiff that the directors exceeded their authority in taking the stock instead of money, when the stock had only a speculative value. It was not taken as an investment, but as a part of a trade. It may have been the best trade possible under the circumstances. We shall not discuss the responsibility of the directors for making the trade. But when the trade was accomplished, the stock received as a consideration of the sale belonged to the Smith Publishing Company and should have been issued in its name and turned over to it as assets. Instead, it was issued to, and received and retained by, three of the directors who are defendants, except as director Smith afterwards transferred ten shares to director Brown. It is claimed that the defendants Smith, Clark and Greene believed that the Pulitzer stock was of considerable value, and that their purpose was to retain the stock until it could be sold with advantage, and with the proceeds to pay the corporate debts, and then, as Brown and Hill had practically "dropped out," to divide the surplus among themselves. And this arrangement seems to have been acquiesced in by Brown and Hill.

But whatever may have been the belief of the defendants as to their ability thus to liquidate the debts of the corporation, it, in fact, was insolvent. And they, as directors, were bound to know it. The duty of a director to the corporation requires him to know its financial standing, and he is presumed to know it. He cannot set up his ignorance to defend himself from the consequences of his own dereliction of duty. *Clay* v. *Towle*, 78 Maine, 86. This stock was a part of the assets of the corporation. The assets of an insolvent corporation are a trust fund. In handling and managing the assets, the directors owe the duties and have the responsibility of trustees. Their duty was to put this stock into the treasury of the corporation.

They disregarded their duty. They diverted it from the corporation to themselves. They accomplished a conversion of it. By taking the stock in their own names, the directors who received it became responsible for it to the corporation at its value at the time, the same as trustees and agents are for similar conduct. *White* v. *Sherman*, 168 Ill.; 589; 61 Am. St. Rep. 132; Stanley's Appeal, 8 Pa. St. 431; 49 Am. Dec. 530; 1 Perry on Trusts, Sec. 463.

And all the directors by whose authority or acquiescence this diversion was made are liable to the corporation in this action for the consequences of the breach of trust, as well as those who received the stock. Perry on Trusts, Sec. 419. It is claimed that defendants Hill and Brown are not liable in any event. Hill received none of the stock, and Brown none at the time of the sale. But both were directors and Hill was president of the corporation. They paid little attention to its affairs. They trusted to the judgment of the others, and particularly, of Smith. They neglected their duties. They did not personally participate in the sale, but when they learned the details, they acquiesced, and took no steps to protect the rights of the corporation. Under the rule of liability stated above, we think they are liable to the receiver equally with the others.

One question remains,—the amount of damages. The defendants are liable for the value of the Pulitzer stock at the time it was taken. The plaintiff claims that upon the evidence we should find that the stock was worth its par value. Two of the defendants testify in effect that they regarded it as worth par. But it seems clear to us that in fact it was not worth par. How much it was worth is a question which is not answered by the evidence. It was apparently a speculative stock. It does not appear to have been on the market, and probably had no market value, strictly so called. Yet we cannot assume that it was valueless. Its actual value must have depended on many conditions, hardly any of which appear in this case. The value of a share of capital stock in a corporation depends largely upon the value of its actual assets, its liabilities, the state of its business, its good will, its reasonable expectations and the amount of capital stock issued. Upon the evidence before us, to determine the value of this stock at the time of sale would be mere guess-work. There are no sufficient data for anything but surmises. To attempt a determination would be likely to result in rank injustice to one side or the other.

We think the circumstances are such that the case should be sent back for an assessment of damages on account of the Pulitzer stock. Justice requires it.

The certificate will be,

>*Defendants defaulted.*
>
>*Remanded for hearing in damages at nisi prius, on account of stock converted.*