## GOESS v. EHRET.
### No. 435.

Circuit Court of Appeals, Second Circuit.
July 27, 1936.

Frederic P. Warfield, of New York City (Alfred L. Becker, of New York City, of counsel), for appellant.

Conboy, Hewitt, O'Brien & Boardman, of New York City (Martin Conboy, David Asch, William J. Butler, and Hobart L. Brinsmade, all of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment upon a note in favor of the Harriman Bank, of which the plaintiff is receiver. He has acknowledged liability for part of the note and paid it; against the balance he set up a counterclaim, based upon his rescission of purchases of eighty shares of the bank's stock. The facts as developed before the judge to whom the case was tried without a jury were as follows: The Harriman Securities Company had been organized by Harriman, the bank's president, to support the value of the bank's shares. From time to time this company would buy shares and hold them until Harriman could find a sale for them to others, the bank lending it the money for the purchases, and taking the proceeds of the sales in payment of its advances. Harriman, who dominated the company and the bank, wheedled the defendant, Ehret, into a series of purchases of bank shares in which the bank appeared as the seller. Ehret paid for the first twenty shares in cash; on June twenty-second and twenty-third he bought fifty shares more at about fifteen hundred dollars a share, for which he gave his note; and on December twenty-third he bought an added thirty at about fourteen hundred dollars, for which he also paid by a note. These notes have by renewals been merged into the note in suit. In May, 1931, he had become a director of the bank and remained such until after it closed its doors, insolvent, on March 3, 1933. During six months of this time he was a member of the executive committee and he was a member of the examining board throughout the year 1932. The counterclaim is based upon Harriman's fraud in telling him that the shares were worth what he paid, when in fact their value was only about one-fifth as much. On June 4, 1931, he was present at a meeting of the board of directors at which a report of a national bank examiner was presented, which showed that the shares had a book value of $302, as of March twentieth; on November 27, 1931, the bank's secretary presented a report of the New York clearing house showing that their value as of October was $293; this report also expressed surprise at the prices at which the stock was selling, in view of its book value and apparent earning power. Ehret did not examine these reports, but relied at the time of each purchase upon what he was told by Harriman whom he regarded as a person of great importance, and with whom he was flattered to be associated. Not only did he fail to examine them, but he took no action to disaffirm his purchases until after the bank's collapse on March 3, 1933. Harriman had been forced out of the presidency in the summer of 1932, and in September of that year the new president informed the board of those falsifications of the books, for which Harriman was eventually convicted and imprisoned. On these facts the judge

dismissed the counterclaim and directed judgment on the note.

 It is not necessary for the disposal of this case to rely upon anything but the fact that Ehret was a director of the bank; we can assume everything else in his favor, and we do so, arguendo. That is to say, we assume that Harriman's declarations to him charged the bank; that these amounted to actionable deceit which entitled him to disaffirm his purchases; that, though a shareholder, he could share in the assets on even terms with other creditors and ahead of shareholders; in short that he could have recovered, had it not been for the fact that he was a director from May, 1931, forward. That fact alone charged him with notice of the truth of those declarations on whose falsity he must rely as the gravamen of his cause of suit. We need take no extreme position as to the duty of the victim of a deceit to make any independent examination of his own. There is indeed high authority for the proposition that when he has as good access to the facts as the utterer, he must avail himself of that opportunity. Slaughter's Administrator v. Gerson, 13 Wall. 379, 20 L.Ed. 627; Farnsworth v. Duffner, 142 U.S. 43, 47, 12 S.Ct. 164, 35 L.Ed. 931. But it may be doubted whether that doctrine would prevail to-day, and we will assume that it would not, because the situation at bar is toto coelo different. Ehret had undertaken to take part in the management of the bank against which he now sets up this claim; he had sworn to be diligent in his duties. Had he been loyal to that oath and to that trust, he would have learned the falsity of the statements of which he complains; his faithlessness is an essential element of his grievance. That is a position which the law will not allow him to take. Gillet v. Phillips, 13 N.Y. 114, 117; Osgood v. Laytin, 3 Abb.Ct.App.Dec. 418, 422, 423; Anthony v. Jeffress, 172 N.C. 378, 90 S.E. 414; Ronald v. Schoenfeld, 94 Wash. 238, 162 P. 43. Cf. Lowry Banking Co. v. Empire Co., 91 Ga. 624, 626, 17 S.E. 968; Folsom v. Smith, 113 Me. 83, 89, 92 A. 1003. We do not charge him with knowledge of all that the books contained (Briggs v. Spaulding, 141 U.S. 132, 162, 163, 11 S.Ct. 924, 35 L.Ed. 662); but the minimum required of him was to look at those reports of the bank's financial condition which were presented to the board while he was present. His oath forbade his abandoning the conduct of the business to Harriman. (Bowerman v. Hamner, 250 U.S. 504, 513, 39 S.Ct. 549, 63 L.Ed. 1113); not even though he was infatuated enough to entrust him with his own money. He became indeed no more than that echo which, unabashed, he now in his defense insists that he was. The question is not therefore one of laches, of delay reasonably to seek a remedy upon an existing wrong; Ehret was never wronged at all; in accepting Harriman's word as a substitute for the discharge of his own duties, it was he who was the wrongdoer. An actionable deceit presupposes a duty of the utterer to speak the truth, if he speaks at all; the bank owed no such duty to its directors; so far as there was any, it ran in the opposite direction. Directors have often enough been dummies and have escaped; but, so far as we can find, this is the first instance in which anyone has had the effrontery to make his neglect the basis of a claim against his victim. If men choose to assume positions of trust and responsibility, it is no excuse for their defection that they are dazzled by the glamor, or cajoled by the wiles, of a glib adventurer.

Judgment affirmed.