**PAINTER CARPET MILLS, INC.,**
**Plaintiff-Appellant,**

v.

**SIGNET CARPET COMPANY, Inc.,**
**Defendant,**

**Mr. Howard E. Ross, Sr., Garnishee-**
**Appellee.**

**No. 30852.**

United States Court of Appeals,
Fifth Circuit.

March 24, 1972.

Nolan B. Harmon, Atlanta, Ga., for plaintiff-appellant.

Pittman & Kinney, Dalton, Ga., for garnishee-appellee.

Before TUTTLE, WISDOM and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

Painter Carpet Mills, Inc. appeals from a judgment in favor of the garnishee, Howard E. Ross, which followed a determination by the trial court on "undisputed facts" that at the time of the service of summons of garnishment on Ross he was not indebted to the defendant debtor against which Painter had obtained a default judgment for $10,577.70 in the main action.

In 1967 Ross was president, a director, managing officer and, after February, the sole stockholder of Signet Carpet Company. During that summer the company was in straitened financial condition. From October 1st, Ross was directing the bookkeeper to hold up mailing of already signed checks until they could be covered by bank deposits. This condition continued until Ross sold his stock in January 1968.

The trial court found as a fact that Signet was insolvent on October 1, 1967. That fact is not challenged by Ross or by Signet.

The "undisputed facts," recited by the trial court, show that "during the year 1967" Ross drew out $86,100 in cash from Signet, to which he was not legally entitled. Moreover, Ross caused Signet to pay $6,456 to Keating, to pay for stock which Keating sold to Ross; the company also paid out $3,745 for a Florida lot purchased by Ross, and paid $5,000 in partial payment for an airplane purchased by Ross personally.

Thus, the undisputed facts are that Ross had been benefitted to the extent of $101,301 by use of company cash, for which he was required, as an officer and director of the company, to account to it.

All of this was found by the trial court, and it certainly accords with sound legal principles. This case arose at a time prior to adoption of the Model Business Corporation Act. The law applicable to the case is Section 22–709, of the 1933 Georgia Code. This section provides:

"Directors of insolvent corporations; duties.—Directors primarily represent the corporation and its stockholders, but when the corporation becomes insolvent they are bound to manage the remaining assets for the benefit of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." Sec. 22–709 Code of Georgia 1933, as amended.

This, then placed the burden on Ross, as garnishee, to show by what manner he had, by the time the judgment was obtained against Signet by Painter, and summons of garnishment had been served, placed himself in a position so that he was no longer indebted to Signet.

This proof is somewhat confusing, because the "facts," which the trial court, and which the appellee here stoutly, says were undisputed and sufficient to support the judgment do not make the dates of payment entirely clear. However, these facts do emerge:

(1) Ross repaid $25,000 in April 1967.

(2) Ross "loaned" $45,000 to the company in September 1967 (although this was called a "loan," since there was, in the state of the accounts, no obligation for Signet to repay it, we may treat it as repayment on account of Ross's overdraft of $101,301.)

(3) $25,000 of the indebtedness from Ross to Signet arose by his taking $10,000 cash out of the company on October 9th (9 days after the date on which the court found insolvency to exist), and he took an additional $15,000 on January 3, 1968 (although this is a few days after the end of 1967, it is believed that this item is included in the total indebtedness of $101,-301.)

(4) At the time of insolvency and thereafter, Ross was either endorser or guarantor of (1) a note owed by Signet to Hardwick Bank & Trust Company for $25,000, and (2) accounts payable due to American Enka; and (3) for any charge-backs by Coleman and

Company which had factored Signet's accounts.

(5) Neither the stipulated facts nor the documentary evidence discloses any demand upon Ross by either Hardwick Bank or Enka for payment under his guaranty.

(6) The documentary evidence shows that Signet's note was, prior to the service of garnishment, taken out and a note by Ross for $25,000 was substituted for it. This note was secured by a certificate of deposit for $31,000 owned by Ross, and, after service of garnishment, Ross cashed the certificate and paid off his note. The bank's records indicate that it had considered Signet's note "paid" by substitution of Ross's note.

Both the trial court, on considering a post-trial motion for reconsideration, and Ross's counsel adamantly adhere to the position that, by agreeing to take the case from the jury, both parties stipulated to the facts as recited in the court's order of May 22nd, "as amplified by details of the documentary evidence in the case," and that these were to be taken as agreed findings of fact. As we have stated, the issue between the plaintiff, appellant, Painter and Ross, as garnishee, is to be decided by answering the question whether Ross was liable to Signet on any part of the withdrawals of $101,301, for which the trial court found he must account.

As stated by the trial court:

"It is well settled that such claims are to be measured by the garnishee's relationship to the principal debtor and he may set-off whatever demands he might have set off against the principal debtor in a suit by it. Johnson v. [Varnum] 43 Ga.App. 737 [159 S.E. 908] (1931); Kilpatrick v. Aetna Ins. Co., 105 Ga.App. 816 (2) [125 S.E.2d 791] (1962). A garnishing plaintiff occupies no better position in respect to the garnishee than does the defendant debtor, and if such debtor could not get judgment against the gar-

nishee, the garnishing plaintiff will also be unable to prevail. Lamb v. Allstate Insurance Co., 103 Ga.App. 107 [118 S.E.2d 740] (1961)."

The trial court also correctly stated the Georgia law as to the time of fixing liability as between Ross and Signet:

"Because of the significance of the date of service of the summons of garnishment, April 18, 1969, the point at which liability becomes fixed on a guaranty is controlling. This is especially so in view of the language of Ga.Code § 46–201 and § 46–203, which indicate that payments made after the lien of garnishment attaches are made at the peril of the garnishee unless clearly made on a valid preexisting liability. See in this connection Hatten v. Central R. Co., 32 Ga.App. 789 [124 S.E. 808] (1924); Odum v. Macon R. Co., 118 Ga. 792 [45 S.E. 619] (1903).

The time of fixing liability on a guaranty or endorsement, under Georgia law, appears to be determined by the conditions of the instrument, i. e. upon default by principal debtor, upon notice or demand, or whatever condition the particular agreement provides. Texaco, Inc. v. Hurt, 118 Ga. App. 413 [164 S.E. 278] (1968)."

Applying this law, the trial court correctly, of course, held that Ross had properly accounted for $70,000 of his overdraft by making cash payments of this amount to the company. The court also found that he had accounted for $24,380 additional because early in 1968, after Ross had sold his interest in the company, Ross, who had endorsed a note for $25,000 to the Hardwick Bank, substituted his own note for that amount, and, sometime after the service of garnishment, Ross actually paid the sum of $24,380 on this debt. Thus, under the court's decision, there was still a balance of $6,921 for Ross to account for. The trial court found, as a stipulated "fact" that:

"(5) The following payments made by corporations controlled by Mr. Ross and debts of Signet personally guaran-

teed by him prior to January 15, 1968; [a date three and a half months after insolvency]

(5a) $10,672.86 paid by Fort Valley Mill to American Enka prior to garnishment on April 18, 1969 and

(5b) $19,557.88 thereafter

. . ."

The court noted that, as to the item of $10,672.86 the condition under which Ross, as guarantor, would be liable, "it appears as to American Enka, such condition was simply nonpayment by the debtor and demand. At least as to the $10,672.86 paid prior to service of summons, the condition had been met, the liability on the guaranty had become fixed, and payment actually made. Accordingly, Ross was entitled to offset such payments."

This, then, accounted for more than the $101,301, and the court entered judgment for the garnishee.

It will be noted that on October 9, 1967, Ross took $10,000 out of Signet's cash, and on January 3, 1968, he took another $15,000. The court found that the company was insolvent as at October 1, 1967. The trial court dealt with the problem as though the corporation, although insolvent, had, by proper corporate action, preferred one creditor under circumstances that the directors would also be benefitted. In such a case, as the trial court said, the Georgia Court of Appeals has stated, in Ware v. Rankin, 97 Ga.App. 837, 104 S.E.2d 555 that, whether there is a voidable transaction as to the benefitted director is a question of fact, that fact being the intent with which the preferential payment is made.

This is not such a case. The Signet Carpet Company did not, by corporate action, decide to prefer its creditors Hardwick Bank and American Enka and make a payment to them. The president-managing director—an alter-ego of Signet—simply took $10,000 cash on October 9, and $15,000 on January 3rd. There is no evidence, and certainly no stipulation or finding by the court, that these amounts *were to be used for the pay-*

*ment* either to the bank or to Enka or anything else nor was there any finding or stipulation that they were so used.

We have here the simple fact that Mr. Ross, who considers himself the owner of all the company owned, dipped into the cash balance for his own account. When, thereafter, he concluded to do so (and there is nothing in the stipulated facts to show a demand either by the Bank or by Enka) he made some payments on these two accounts.

We conclude that the strict liability as literally spelled out in the Georgia Code Section above quoted must be applied to a director-president-manager-alter-ego, who simply takes $25,000 in cash from his insolvent corporation, leaving unpaid general creditors, even though he may thereafter make some payments on the company's obligations for which he also is personally liable. The $25,000 withdrawn by Ross, without authority, is a debt owed to Signet (it being the duty of Signet's directors to marshal the assets for the benefit of its general creditors). That cannot, as to a subsequent garnishment action, be offset by any of the assumptions of liability by Ross to certain selected creditors. The Georgia Supreme Court opinion in Lowry Banking Co. v. Empire Lumber Co., 91 Ga. 624, 630, 17 S.E. 968, 970 from which Section 22–709 of the Georgia Code was codified, said, citing other authorities:

" 'The directors of an insolvent corporation, while it is under their management, hold the position of trustees of its assets for the benefits of its creditors. If they are themselves creditors, they are precluded by their trust from securing through themselves, by their official action, any preference or advantage over other creditors' ".

And again on page 632, 17 S.E. page 970, citing Adams v. Kehlor Milling Co., C.C., 35 F. 433, the Georgia Supreme Court said:

"In that case a mortgage executed in favor of a creditor, who was a brother of two of the directors, was set aside on the grounds stated, although there

was an entire absence of fraud, and there seemed to be no occasion to criticize the conduct of the directors in any other respect. In Beach et al. v. Miller, (Ill.Sup.) 14 N.E.Rep. 698, we find the following language: 'The officers of a corporation in an insolvent condition cannot make a wholesale distribution of all its assets among themselves, to the exclusion of other creditors. This could not be allowed, even though such officers were *bona fide creditors.*' "

The Supreme Court of Georgia reiterated this principle in Tatum v. Leigh, 136 Ga. 791, 72 S.E. 236. These two cases are controlling here, because they both deal with transfers of an insolvent corporation's assets *directly to directors,* rather than, as in the case of the Ware line of cases, to a preferred creditor. It is only in the latter kind of case that the *intent* or *good faith* of the directors is brought into issue.

We do not reach the interesting question which is raised by virtue of the manner in which Ross undertook to discharge part of the obligations which he owed as guarantor of Signet's indebtedness. As noted above, the court credited him with payments of in excess of $10,-000 made to American Enka by Fort Valley Mills, an entirely separate corporation which the court found to be "controlled" by Ross. Even though Ross was the sole owner of that corporation, presumably it had its own creditors, including the United States Government, that had an interest in the manner in which it was disbursing its funds to its stockholders, and it is difficult to see how Ross individually could be subrogated to Enka's claim against Signet if payments on the indebtedness of Signet were made for Ross's benefit by the Fort Valley Mill Corporation. Moreover, it is sig-

nificant on the point that the trial court made no finding that there was a demand by American Enka (and we have carefully checked the testimony of Mr. Ross and find that he did not testify as to any demand), because it appears from the exhibit showing payments made by Fort Valley Mills to American Enka several thousand dollars was paid during the period of October 1st and January 3rd, during which time Mr. Ross found enough cash in the till of Signet Carpet to withdraw $25,000 for his own use. It would thus seem impossible for the trial court to have made a finding that had Signet desired to prefer Enka as a creditor, it was totally unable to do so at the time when Ross was getting credit for making payments on behalf of the principal through using the funds of Fort Valley Mills.[1] Thus Fort Valley Mills, its stockholders and creditors, would doubtless be very reluctant to surrender its right of subrogation to Enka's claim against Signet to Ross. In any event, there is no evidence that it ever did so. Lacking this, Ross could not technically have any off-set of the claim against him by Signet.

We also need not reach the question urged by the appellants that the facts as agreed to, and as found by the trial court, required a decision by the trial court that the purported offsets claimed by Ross because of his assumption and payment of debts of Signet, which he would otherwise become liable to pay, amounted to legal fraud on the unsecured creditors. The trial court held that since the stipulation itself did not contain the stipulation of existence of bad faith or fraud, such a conclusion could not be made by it in disposing of the case. With the difficulty which we have in determining any possible basis for the actions by Ross other than one to benefit himself at the expense of the

---

[1]. The amount of payments exceeding $10,000 allowed by the trial court do not appear in the form of checks introduced in evidence, but, it is noted that in response to interrogatories filed by the plaintiff, counsel for Mr. Ross stated, "In addition to this other payments and credits have been made. American Enka Corporation agreed to overcharge Fort Valley Mills 5 cents a pound on yarn, with such overcharge to apply on this guarantee, and this came to approximately $7,000."

unsecured creditors we are not at all sure that it was not open to the trial court to draw the inference from such admitted facts as would permit a finding of legal fraud. However, as stated, such a finding is not necessary in light of the disposition we make of the case.

In sum, therefore, the withdrawal by Ross of $25,000 after the corporation became insolvent is an outstanding obligation which he owes to the corporation which, under the Georgia law, remains alive for the marshaling of the assets for the benefit of its creditors, even after insolvency. He did not discharge his obligation by discharging his personal obligations on guaranties. This follows from the strict rule that when a director makes payments to himself out of an insolvent corporation, he may not personally benefit, without regard to his intent or purpose later to discharge obligations owed by the corporation. For this reason, at the time the service of garnishment was served, Ross was still indebted to his corporation in the sum of $25,000.

The judgment of the trial court is reversed and the case is remanded for entry of judgment in favor of the plaintiff in garnishment.