| 149 | 148 |
| 183 | 458 |
| 149 | 148 |
| 202 | 594 |

Sicardi et al. *v.* Keystone Oil Company et al.   Kersteter's Appeal.

*Insolvent corporation—Mortgage bonds issued to president—Subsequent assignee.*

The president of an insolvent corporation cannot, by accepting its mortgage bonds on account of his claims against it, acquire a preference over its unsecured creditors; and a subsequent assignee of the bonds with no greater equity than the president is in the same position.

Argued Oct. 7, 1891. Appeal, No. 266, Oct. T., 1891, by L. R. Kersteter, a creditor, from decree of C. P. Venango Co., Nov. T., 1887, No. 4, confirming auditor's report and distributing funds in the hands of the receiver of the Keystone Oil Company. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Claim of mortgage bondholder to share in the proceeds of the real estate mortgaged.

This claim was before the same auditor and on the same fund as in the preceding case. The facts, as found by the auditor, were as follows:

" On October 7 and 8, 1887, the board of directors of the Keystone Oil Company authorized a mortgage to be placed on the property of the company, for the purpose of raising money to pay the company's debts. The Keystone Oil Company, in accordance with the resolutions, in proper form executed and delivered to W. H. Wise, trustee, a mortgage dated October 12, 1887, and recorded October 13, 1887, to secure the payment of 75 bonds, Nos. 1 to 75, inclusive, for $1,000 each, with interest payable semiannually at 6 per cent on the 12th day of April and October in each year, on its land, 55$\frac{15}{100}$ acres in Cornplanter township, with the appurtenances thereon located. Twenty-five bonds secured by above mortgage were issued dated October 12, 1887, and payable to trustee or bearer. . . .

" October 13, 1887, fifteen bonds Nos. 51–65 inclusive (claims Nos. 161–175 inclusive), due October 12, 1889, were sold to J. B. Smithman at par. September 9, 1887, Smithman and Tinker purchased the pipe line from the Keystone for $50,000, and conveyance made for same to Smithman, Tinker & Co. Tinker gave Smithman his note for $3,000 for his interest. This note

was never paid and Smithman held and sold the pipe line as his own property. On October 13th, Smithman was owner and manager of the pipe line and Jno. C. McKisson was bookkeeper of the line and secretary of the Keystone. On October 8th, the Keystone Oil Company owed Smithman, Tinker & Co. $14,213$\frac{32}{100}$, of which $7,793$\frac{32}{100}$ was for cash advanced in September, 1887, and the balance was for crude oil furnished. On October 13, 1887, the amount owed was $15,457$\frac{7}{100}$. A check for $14,000, dated October 13, 1887, in favor of Smithman, Tinker & Co. and signed Keystone Oil Company, John C. McKisson, secretary, and indorsed Smithman, Tinker & Co. by John C. McK., was drawn and paid. October 13, 1887, Smithman, Tinker & Co., by Jno. C. McKisson, gave a check for $12,000 to John B. Smithman, which was paid. October 13, 1887, John B. Smithman gave his check for $15,000 to Keystone Oil Company, which was paid, in payment for above mentioned 15 bonds, and it is endorsed Keystone Oil Company, by Jno. C. McK. The bonds were subject to Smithman's control as president of the company and at this time he knew that the company was insolvent.

" These bonds were put up by Smithman as collateral at the Oil City Savings Bank—then sent to the Duquesne Bank of Pittsburgh and sold at 94 to Munhall on Smithman's personal guarantee. When the guarantee was asked to be made good the bonds were returned to the Oil City Savings Bank by Smithman's direction and ordered sold for not less than $3,500. L. R. Kerstetter, who had been an employee of Smithman for about fifteen years, purchased them on December 30, 1890, for $3,500 by check on Oil City Savings Bank. On the morning of December 30, 1890, he had credit at the bank of $1,063$\frac{38}{100}$ and made a deposit that day of $3,011 by check of Smithman's. Kerstetter had loaned Smithman $3,000 some four or five weeks previous and was repaid. Kerstetter knew at the time of purchase that the Keystone Company was insolvent."

The auditor reported in part as follows:

" The mortgage recorded October 13, 1887, is legal and valid, and holders of bonds under it are entitled to participate under lien of said mortgage, unless there are reasons to prevent.

" Under the proofs all bonds, except those held by Kerstetter, are entitled to participate as lien creditors. The Kerstetter

bonds, except one, which for convenience of distribution is designated as bond No. 51, claim No. 161, are entitled to participate only as general credits. This one bond will share as a lien creditor with other bonds under the mortgage, and if not paid in full from fund derived from real estate, will, for balance not paid, come in with them on the general fund. The reasons for the distinction between the Kerstetter and other bonds, briefly, are : Smithman was a director of the company during its existence, and, most of this time, an officer, being secretary from October 5, 1886, to September 29, 1887, and president from September 29, 1887, and a member of the executive committee from September 24, 1886. At a meeting of the board of directors, held October 7, 1887, at which the resolution to mortgage the property of the company was passed, and before it was passed, J. B. Smithman was present and in the chair as president of the company, when Mr. Cummer, who had been president up until September 29, 1887, stated that the indebtedness of the company was about $200,000, and the liquidating assets $90,000. Smithman was also present at the meeting held October 8, 1887, at which the additional resolution about the mortgage was adopted, and at both meetings voted for the resolution. October 8, 1887, the Keystone Oil Company owed Smithman, Tinker & Co., or, in other words, under the evidence, John B. Smithman, $14,213.32, of which $7,793.32 was for cash advanced in September, 1887, and balance was for crude oil delivered. On October 13th, the indebtedness was $15,457.07. At this time John C. McKisson was secretary of the Keystone and book-keeper for Smithman, Tinker & Co. The mortgage above authorized was executed October 12, 1887, and recorded October 13, 1887. October 13, 1887, a check for $14,000, in favor of Smithman, Tinker & Co., and signed Keystone Oil Company, John C. McKisson, secretary, and indorsed Smithman, Tinker & Co., by John C. McKisson, was drawn and paid October 13, 1887. Smithman, Tinker & Co., by John C. McKisson, gave a check for $12,000 to John B. Smithman, October 13, 1887. John B. Smithman gave his check to Keystone Oil Company, delivering it to the secretary, in payment of the fifteen bonds, and the check is indorsed Keystone Oil Company, by John C. McKisson. The bonds were in Smithman's control as president of the company. In short, Smithman, as director

and officer of the company, with full knowledge that it was insolvent, assists in mortgaging the property of the company, and as soon as the mortgage is executed and recorded, by a mere juggle converts himself from a general unsecured creditor into a preferred lien creditor. Other creditors had no show until he had secured himself in full, and the mortgage, with bonds issued under it, was not sufficient to pay all unsecured creditors. So far as Smithman was concerned this was simply a fraud in law, which gave him no preference over general creditors: Hopkins' and Johnson's Appeal, 9 Norris, 69. As Smithman, on October 13th, received $14,000 from the company, and same date paid it $15,000—the difference, $1,000, was a cash payment, and one bond obtained for it must be allowed as a lien under the mortgage.

" The evidence, perhaps, does not disclose whether Kerstetter was or was not a capitalist, but it does show that he had been in Smithman's employ for some fifteen years ; that he did not purchase or obtain the bonds until December 30, 1890, and at time of purchase knew that the Keystone was insolvent. The evidence further shows that these bonds were due and payable October 12, 1889. The tendency of all later decisions is to give to bonds such as these all the incidents of negotiable paper, but Kerstetter's rights, acquired over a year after the bonds were due and payable, rise no higher than Smithman's."

Exceptions filed to the auditor's findings of fact alleged error : 8, in finding that J. B. Smithman knew, when he purchased the bonds held by appellant, that the Keystone Oil Company was insolvent; 9, in not finding that he then believed the company was solvent; 10, in finding that Smithman was sole owner of the pipe line, and, inferentially, that the firm of Smithman, Tinker & Co. was composed of J. B. Smithman alone. Exceptions were also filed to the auditor's conclusions of law, alleging error: 7, in making a distinction between fourteen of appellant's bonds and the other bonds; 8, in finding that Smithman "by a mere juggle" converted himself from a general unsecured creditor into a preferred lien creditor, and that his conduct was a fraud in law which gave him no preference over general creditors; 9, in holding that J. B. Smithman & Co. was, under the evidence, J. B. Smithman; 3, in refusing to confine the mechanic's lien creditors to a part of the fund. The

exceptions were dismissed and the report confirmed by the court below.

*Errors assigned* were (1–7) refusal of appellant's exceptions to auditor's report as above; 8, excluding appellant from participation as to fourteen of his bonds.

*C. Heydrick*, with him *Carl I. Heydrick*, for appellant.—The bonds were negotiable: Mason v. Frick, 105 Pa. 162, and cases cited. Munhall will be presumed to have acquired the bonds before maturity and before default in payment of interest, and appellant stands in his shoes: Sharswood's Note to Byles on Bills, 166.

The transaction between Smithman & Company was valid. Ashhurst's Ap., 60 Pa. 290; Gloninger v. R. R. Co., 139 Pa., 13.

*Roger Sherman*, with him *William McNair, J. L. Dorworth, W. J. Breen, T. F. Ritchey, Ash & Speer, F. W. Hays, J. B. McAllister, J. S. Carmichael, R. W. Dunn* and *Samuel Crumbine*, for appellees, cited Hopkins & Johnson's Ap. 90 Pa., 69, 76; Sawyer v. Hoag, 17 Wall. 610, 622; Long v. Penn Ins. Co., 6 Pa. 421; Morawetz on Corporations, § 582; Rice's Ap., 79 Pa. 168, 184, 203, 205.

In Ashhurst's Ap., 60 Pa. 290, and Gloninger v. R. R. Co., 139 Pa. 13, the dispute was between stockholders; the rights of creditors were not involved.

OPINION BY MR. JUSTICE MCCOLLUM, May 9, 1892:

In the appeal of the Imperial Refining Co., Limited, from the decree complained of in this case, we held, at this term, that the auditor appointed to distribute the fund arising from the sale of the property described in the mechanics' claims, on which judgments were recovered, could not restrict the lien of such judgments to a portion of that property, on the ground that the curtilage designated by the claimants was more than sufficient for the necessary uses of the oil refinery. We need not repeat here what was said there, respecting the powers of the auditor, the effect of the judgments, or the proceedings authorized by the act of 1836 for the ascertainment of the curtilage on the failure of the owner to define it before the commencement of the building. It is obvious that, if the owner and lien creditors acquiesce in the claimants' designation of it, the auditor must accept it, and their neglect to employ the remedies provided by

statute for a modification of it is, in its legal consequences, the same as acquiescence. The decision referred to is conclusive against the appellant on all questions raised by the specifications of error founded on the refusal of the auditor to disregard the designation of the curtilage contained in the record of the judgments, and such specifications are therefore overruled. The remaining specifications relate to the auditor's denial of the appellant's claim that certain bonds held by him are entitled to participate in the distribution of the fund above mentioned, to the exclusion of the general creditors. In view of the conclusion we have reached on the preceding questions, the amount involved in this contention is comparatively small, as the balance of the fund is less than $1,400, and the claims upon it, exclusive of the demands of such creditors, exceed $20,000.

It appears that, on Oct. 12, 1887, the Keystone Oil Co., then insolvent, executed a mortgage in the sum $75,000 upon its property, known as the oil refinery, to secure the payment of 75 bonds of $1,000 each, which the company proposed to issue, professedly for the purpose of raising money to pay its debts. Twenty-five bonds were issued to W. H. Wise, trustee, or bearer, 22 of which were distributed in the month of October, 1887, as follows: 15 on the 13th to J. B. Smithman, a director and president of the Keystone Co.; 3 on the 15th to the Oil City Savings Bank; 2 on the 17th to the Manufacturers' Gas Co., and 2 on the 24th to the Imperial Refining Co., Limited. For these bonds the insolvent corporation received in money $1,000 from Smithman, and $135 from the Gas Co., and credits to the amount of $20,865 on the claims which the respective purchasers held against it. Before this distribution of the bonds was completed a bill for the dissolution of the corporation was filed, and, on Nov. 3, 1887, a receiver of its effects was appointed. The appellant received the Smithman bonds on Dec. 30, 1890, under circumstances which justify the conclusion that he has no greater equity than the party to whom they were originally delivered, if, indeed, he is now anything more than the mere representative of that party in this contest. The balance of the fund arising from the sale of the oil refinery was awarded to 8 bonds, but 14 of the Smithman bonds now held by the appellant were denied any participation in it. All the bonds issued and distributed as aforesaid were allowed a dividend from the other

assets with the claims of the general creditors.   In the opinion
of the learned auditor the president of the insolvent corporation
cannot, by accepting its bonds on account of his claims against
it, acquire a preference over its unsecured creditors, and it
seems to us that this is a correct view of the law applicable to
the facts of this case, that it is promotive of justice, and well
sustained by reason and authority.   It is in harmony with the
principle stated in § 787 of Morawetz on Corporations, as fol-
lows : " Directors of an insolvent corporation, who have claims
against the company as creditors, must share ratably with the
other creditors, in a distribution of the company's assets.   They
cannot secure to themselves any advantage or preference over
other creditors by using their power as directors for that pur-
pose.   Their powers are held by them in trust for all the cred-
itors, and cannot be used for their own benefit." It is a principle
which is recognized in our own decisions, and is not in conflict
with any of them.   If, on the discovery of the insolvency of
the corporation, its officers were at liberty to appropriate its
entire assets in satisfaction of their demands against it, outside
parties dealing with it would be utterly devoid of protection.
The law does not intend or allow such an appropriation by
persons intrusted with the management of the corporation, and
yet it would logically follow the concession that they might
lawfully give a preference to their own claims in the distribu-
tion of its effects.   In this case, Smithman, as director and pres-
ident of the Keystone Oil Co., is chargeable with knowledge of
its condition at the time of the execution of the mortgage ; the
evidence is ample to show that it was then hopelessly insolvent,
and is sufficient, we think to sustain a finding that he was ac-
tually as well as constructively informed of the fact.   With
this knowledge, he sought, by means of the mortgage, to obtain
a preference for his own claim, which preference the appellant
is striving to enforce, when it is apparent, from the undisputed
testimony, that his right is no higher than Smithman's.   We
think he has no valid ground to complain of the decision of the
court below.

Decree affirmed, and appeal dismissed at the costs of the
appellant.