ROBERT L. LEACH, Superintendent of Banking, Appellant, v. J. M. BEAZLEY et al., Appellees.

**BANKS AND BANKING:** Insolvency—Unallowable Preference to 1 Bank Officials. A president or director of an insolvent banking corporation will not be permitted to surrender his personal deposits in the bank and to take the good assets of the bank in payment therefor; otherwise if the deposits represent the funds of an estate of which the bank official is administrator, and the exchange involves no element of *personal* gain to the administrator.

**BANKS AND BANKING:** Deposits—Relation Between Bank and Depositor. 2 Principle reaffirmed that the deposit of money in a bank creates the relation of debtor and creditor, and not that of borrower and lender.

**BANKS AND BANKING:** Insolvency—Knowledge of Officers Presumed. 3 Principle reaffirmed that for many purposes the managing officers of a bank will be conclusively presumed to have knowledge of the insolvent condition of their bank.

Headnote 1: 7 C. J. p. 728. Headnote 2: 7 C. J. p. 642. Headnote 3: 7 C. J. p. 728.

*Appeal from Cherokee District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 16, 1926.

ACTION by plaintiff Leach, receiver, against the defendants, to recover certain security and notes held by the defendants, claimed to have been unlawfully removed from the assets of the Farmers State Bank of Washta, Iowa, for which plaintiff, as

superintendent of banking, is the duly appointed receiver. The district court refused the relief prayed, and plaintiff appeals.— *Affirmed in part; reversed in part.*

*Ben J. Gibson,* Attorney-general, and *W. P. McCulla,* for appellant.

*Kass Brothers, T. E. Diamond,* and *J. A. Miller,* for appellees.

ALBERT, J.—I. It appears from the record that the Farmers State Bank of Washta, Iowa, was duly and legally incorporated as a state bank under the laws of the state of Iowa, and conducted a general banking business for a number of years prior to May 5, 1924. At all times involved herein, the appellee J. M. Beazley was president of said bank, and M. L. Beazley was cashier. J. A. Miller was a director. An application for appointment of a receiver was made, prior to the 28th of April, 1924, and the bank had closed its doors several days before the application was made. The receiver was appointed on the 5th of May, 1924.

1. BANKS AND BANKING: insolvency: unallowable preference to bank officials.

It appears that, in the first part of March, 1924, J. M. Beazley was the holder of a certificate of deposit for $7,000 in the aforesaid bank, on which there was $494.85 interest due; that on that date he turned in the said certificate of deposit to the bank, and received from the said bank its equivalent in promissory notes then held by the bank. These notes were indorsed to him without recourse, and the certificate of deposit was duly canceled by the bank. On the 18th of March, he received from the bank a note for $1,333.33, made by one C. J. Beazley, for which he gave to the bank his check on his open account for the amount due thereon. On the 25th of March, he received from the bank 15 promissory notes made by various parties to the bank, for which he gave to the bank his check on his open account. On the 18th day of April, he received from the bank 8 promissory notes, formerly payable to the bank, for which he gave the bank his check on his checking account for the sum of $1,105.20. The 35 notes received by Beazley

from the bank amounted to approximately $13,300. After these transactions, Beazley's deposit account had left in it $48, and he still had a certificate of deposit against said bank for $3,000 and interest.

This bank had been in financial distress for some months previous to the time in controversy. In February, 1924, on the demand of the state superintendent of banking, a list of notes held by the bank, amounting to something over $44,000, was pointed out as of doubtful worth, and the officers and directors of the bank guaranteed the notes thus pointed out by the banking department. From that time on, the bank seems to have been in distress. Later, the board of directors authorized its officers to borrow $50,000; but, in spite of this, the reserve of the bank steadily decreased, so that in April, after several meetings of the directors and stockholders, it was realized that the enterprise could not be continued. A petition was then filed, and a receiver appointed to take charge of the affairs of the bank.

It is the claim of the receiver that J. M. Beazley, being, at all times in controversy herein, the president of the said bank, had no authority to secure the benefit of his own deposits by thus removing what was apparently good commercial paper, and thereby withdraw his deposits from the bank, while it was insolvent, to the prejudice of all other depositors therein. The claim of defendant J. M. Beazley is that he bought this paper from the bank in the regular and due course of business, and that it was all done in good faith on his part. His explanation is that his deposits were drawing only 4 per cent, and he wanted a larger rate of interest, which could be secured by taking the commercial paper from the bank; that it drew 8 per cent interest. He denies any knowledge of the insolvency or failing condition of the bank. Without now stopping to set out the testimony, we are not disposed to take this explanation on the part of Beazley as to why this commercial paper was taken. We are quite satisfied, after reviewing all of the evidence, that he knew the bank was insolvent at the time he took the paper; or, if this be not so, he was an officer of the bank, and in law was bound to know its condition.

It is also the claim of Beazley that the bank was not in-

solvent at the time of these transactions. We have carefully gone over the bank's statements and the list of notes which are set out in the record other and different from those taken by Beazley, and also other and different from those which constitute the $44,000 which the directors and officers of the bank had guaranteed in February, and are satisfied beyond doubt that approximately $80,000 of this paper was absolutely worthless. Counsel argue that it was slow paper, which would be realized on in time. The evidence abundantly shows, however, that as to a large part of it the makers thereof had either gone through bankruptcy or were at the time insolvent. Some of it represented indebtedness to the bank of five years' standing, and all of it had been in the bank more than three months prior to the appointment of the receiver. If this amount is deducted from the assets of the bank, the inevitable conclusion is that during all this time this bank was actually insolvent.

To set out the details of this matter would make this opinion too long. We have this situation: J. M. Beazley was president of this bank, and took from its assets good commercial paper to the amount of about $13,300, and attempted to pay for the same by turning in the aforesaid $7,000 certificate of deposit and checks for the balance on his open account in the bank. The bank was insolvent at this time, and we are abundantly satisfied from the evidence that he actually knew of its insolvency at the time of his transactions. The question is whether or not, under these circumstances, he is entitled to hold the commercial paper thus acquired by him, and thereby, in effect, secure a preference against all other depositors for the amount he had on deposit in the bank. His contention is that, even though the institution was insolvent, and though he knew it was insolvent, yet, since he was one of the creditors of the bank, it was simply a question of the diligent creditor, and therefore he cannot be deprived of the benefit of his diligence. He bottoms his contention on the following Iowa cases, where such a rule is pronounced: *Buell v. Buckingham & Co.*, 16 Iowa 284; *Garrett v. Burlington Plow Co.*, 70 Iowa 697; *Warfield, Howell & Co. v. Marshall County Canning Co.*, 72 Iowa 666; *Rollins v. Shaver Wagon & Carriage Co.*, 80 Iowa 380; *In re Assignment*

*of Bloomfield Woolen Mills,* 101 Iowa 181; *Manton v. Seiberling & Co.,* 107 Iowa 534.

It is claimed by counsel that the above rule is, in effect, overruled by our case of *Dawson v. National Life Ins. Co.,* 176 Iowa 362; but we do not feel called upon at this point to pass upon that question, because we do not think the same has any application to the facts in this case. It will be found by a reading of the above cases that each one deals with private corporations, and not with banking corporations. Too, each of those cases deals with a transaction wherein there was a good-faith loaning to the company of funds which were then or subsequently secured by mortgage or otherwise. In other words, each case deals with a good-faith loan to a private corporation, and it is held that, even though the corporation may be insolvent, a good-faith loan of that kind may be secured to the creditor although that creditor is an officer or director of the corporation, and the corporation was insolvent, and known to be so by the officer when he took the security. In the instant case, we have an entirely different situation. J. M. Beazley was an officer of and a depositor in this bank. It therefore becomes necessary to determine what his relation to the bank was, by reason of his deposits. It is true that, in some of the earlier cases in this

2. BANKS AND BANKING: deposits: relation between bank and depositor.

state, we referred to a deposit made in the bank as a loan; but in later cases we receded from this doctrine, and held that money thus deposited in the bank was not a loan, but simply created the relation of debtor and creditor between the bank and the depositor. Such rule is announced in *Officer v. Officer,* 120 Iowa 389; *Hunt v. Hopley,* 120 Iowa 695; and *State ex rel. Carroll v. Corning St. Sav. Bank,* 136 Iowa 79. In *Hunt v. Hopley,* supra, referring to a deposit, we said:

"The transaction differs essentially from a loan. That is for the benefit of the borrower, while a deposit is for the benefit of the depositor. The depositary may obtain an incidental advantage, but that is seldom the original object contemplated. In a loan, the borrower promises to return the money at a future time; in a deposit, whenever the money is demanded. True, the technical relation of creditor and debtor springs from the making of deposits; but few of the many people who daily

leave money with banks for safe-keeping, and exact the return of an equivalent amount, ever think of the transaction as a loan, or ever speak of it as such.''

In the case of *Elliott v. Capital City St. Bank*, 128 Iowa 275, we overruled our previous cases of *Lowry v. Polk County*, 51 Iowa 50, and *Long v. Emsley*, 57 Iowa 11, and held specifically that an ordinary deposit of money in a bank was not a loan to the bank. With this conclusion we are content. It is apparent that the rule announced, governing loans made to private corporations, is not necessarily controlling in the case we have at bar.

The relation existing between a banking corporation and the general public is wholly different from that of the relation between the general public and a private corporation. We have recognized the thought that banks are affected with a public interest by the legislature's establishment of a state banking department, under whose supervision these banking institutions are established, controlled, and conducted, and, in cases of insolvency, liquidated. This we have not done with any private corporations. Hence, to our minds, many of the rules governing private corporations have no application to banks. To approve this method of withdrawal of deposits by the officers of a failing bank, to our minds, would be wholly inequitable. Once we approve such rule, then, in every instance where a bank is insolvent or in failing condition, every officer and director, and possibly stockholder, knowing of the impending crisis, could withdraw his deposits, and thus prefer himself, to the disadvantage of the ordinary depositor. That this is not permissible is settled by the authorities. In the case of *Benedum v. First Citizens Bank*, 72 W. Va. 124 (78 S. E. 656), it is held that an officer is liable for withdrawal from an insolvent bank, after knowledge of its insolvency, of deposits made and controlled by him though he is not the sole owner thereof. Transformation by an officer of a failing bank of its certificates of deposit held by him into a well secured debt held by the bank, by surrender of the certificates in part payment of the debt and by taking a new note from the debtor, secured and payable to himself, constitutes a preference, the benefit of which must be surrendered in the settlement of the affairs of the bank.

In *Roan v. Winn,* 93 Mo. 503 (4 S. W. 736), a conveyance was made of two tracts of land, almost two years before the proceedings in court, to one of the directors in the bank. The bank was, in fact, insolvent at the time, to the knowledge of the grantee of the deed; and it was held that the deed should be set aside. To the same effect is *Lamb v. Laughlin,* 25 W. Va. 300.

In *Ingwersen Bros. v. Edgecombe,* 42 Neb. 740 (60 N. W. 1032), the Supreme Court of Nebraska had before it a case in which a bank issued to one Teidgen a certificate of deposit for $5,000, on September 1, 1891. On the 9th of July following, Teidgen, as vice president of said bank, for the purpose of securing said certificate of deposit, executed a mortgage in behalf of the bank, conveying to himself a lot owned and occupied by said bank as a place of business. On the 15th of the same month, the bank was adjudged insolvent. Action was brought by an assignee of Teidgen's to foreclose the mortgage. In disposing of the case, the court said:

"But the view which may be said to rest upon the soundest reasons and is sanctioned by the decided weight of authority is that, when a corporation becomes insolvent, its property and assets constitute a trust fund for the benefit of its creditors, and that the directors and officers in possession thereof, being trustees for all the creditors, cannot take advantage of their position to secure a preference for themselves, but must share ratably with the other creditors" (citing authorities).

The court denied the plaintiff's foreclosure of mortgage. To the same effect, see *Rouse v. Merchants' Nat. Bank,* 46 Ohio St. 493 (5 L. R. A. 378). To the point that the law imputes to an officer of a bank the requisite knowledge of the bank's condition, regardless of his actual knowledge of the insolvency of the bank, see *Clark Co. v. Colton,* 91 Md. 195 (49 L. R. A. 698); *McDaniel v. Harvey,* 51 Mo. App. 198; *Sicardi v. Keystone Oil Co.,* 149 Pa. St. 148 (24 Atl. 163); *Lowry Banking Co. v. Empire Lbr. Co.,* 91 Ga. 624 (17 S. E. 968); *Roan v. Winn,* 93 Mo. 503 (4 S. W. 736); *Ronald v. Schoenfeld,* 94 Wash. 238 (162 Pac. 43); *Lamb v. Cecil,* 25 W. Va. 288.

3. BANKS AND BANKING: insolvency: knowledge of officers presumed.

To permit J. M. Beazley to retain this paper would be, in

effect, to give him preference over all other depositors, and would be wholly inequitable and unjust. Wait, in his most excellent work on Insolvent Corporations, at page 141, with reference to such a situation, says:

"The unpreferred creditors have only a myth or a shadow left to which resort can be had for payment of their claims; a soulless, fictitious, unsubstantial entity that can be neither seen nor found. The capital and assets of the corporation, the creditors' trust fund, may, under this rule, be carved out and apportioned among a chosen few, usually the family connections or immediate friends of the officers making the preference. This rule of law is entitled to take precedence, among the many reckless absurdities to be met with in the cases affecting corporations, as being a manifest travesty upon natural justice."

So say we here. As supporting this conclusion, see *Slack v. Northwestern Nat. Bank,* 103 Wis. 57 (79 N. W. 51); *Union Coal Co. v. Wooley,* 54 Okla. 391 (19 A. L. R. 312)ʼ, and cases there cited; 14a Corpus Juris 901, Section 3080; *Clark & Co. v. Colton,* supra; and cases hereinbefore cited. We feel that sound public policy and common fairness forbid that a director or managing agent of a bank overtaken by financial disaster should be permitted to convert their power of management and their intimate knowledge of corporate affairs into a means of protection, to the disadvantage of other creditors. We therefore conclude that the receiver's petition stated a good cause of action against the appellee J. M. Beazley.

II. As to the claim of the receiver against J. A. Miller, a somewhat different situation exists. Miller had been a director in this bank for some years prior to the appointment of the receiver. Aside from being a director, he was the attorney from whom the bank sought legal information, when needed, and he was familiar with the condition of the bank. It appears that Miller had been appointed executor of the estate of Cyrus Cook, deceased, who, at the time of his (Cook's) death, held a certificate of deposit in the Farmers State Bank of Washta for $5,520.25. The executor allowed the certificate of deposit to stand in the name of Cyrus Cook until about February 8, 1924, when he took the matter up with the bank, and was paid thereon the sum of $2,967.25, representing one half the face value of the

certificate, plus interest. A new certificate was issued to him for the balance, of $2,760. On the 21st of March following, Miller wrote the bank with reference to the estate money represented by the demand certificate for $2,760. He suggested that he did not want to withdraw it, but that he was willing to use notes for the amount thereof, if it would be more convenient for the bank. He suggested that there was a note for $1,000 made by one Strickling, secured by a mortgage, that he would be willing to accept. On the 22d of March, the bank wrote Miller that the notes would be sent on the following day, in exchange for his certificate of deposit. On April 2d, the bank forwarded the Strickling note to Miller, in pursuance of their correspondence, and charged the same against the aforesaid certificate of deposit, the amount thereof, with interest, being $1,114.75. It appears also that, in settlement of a claim that the bank had placed in the hands of Miller for collection, among other things he took a $1,000 note made payable to him. This was also indorsed on said certificate of deposit. The action of the receiver herein is to recover from Miller the Strickling note, or its value, and also recover the $1,000 above specified.

It is conceded by all parties involved herein that the aforesaid funds were in Miller's hands as executor of the estate of Cyrus Cook, which was known to the bank at all times. These funds were rightfully deposited by him; as, under the present holding of this court, an executor is not bound to carry the money belonging to his estate in his pocket, but is entitled to deposit the same in what appears to him to be a solvent and going bank. This has been the repeated holding of this court. *Officer v. Officer,* 120 Iowa 389; *In re Estate of Ring,* 132 Iowa 216; *Incorporated Town of Conway v. Conway,* 190 Iowa 563; *In re Estate of Workman,* 196 Iowa 1108. Had the deposit been wrongful, a trust would be created thereby, and, the other elements existing, a preference would be acquired by the depositor; but this is a rightful deposit, and no such trust could arise. Therefore, the executor would not have a preferred claim against the assets of the insolvent bank. This hardly answers the question we have before us, as Miller is not making a claim against the bank, and is not seeking a preference; he is defending against a charge of having wrongfully received from the bank

a part of the money belonging to the estate of which he was executor. If we assume, for the sake of argument, that Miller was not an officer, and had no relation whatever to the bank, and that he had withdrawn these funds under the circumstances related, no one would question his right to hold the same. It is to be remembered that, in his official capacity as executor, he was an officer of the court, and the funds with which he was dealing were not his personal funds, and by withdrawing the same he derived no personal benefit, but thereby husbanded his trust estate. Herein, to our minds, lies the difference between his situation and that of J. M. Beazley. What Beazley did was for his own personal benefit and gain, and, in effect, was a legal fraud, as against the other depositors in the bank. Not so, however, with Miller, as he personally profited nothing by reason of the withdrawal of these funds. We are, therefore, of the notion that, although Miller may have known of the insolvent condition of the bank, yet, the fund in his hands being a trust fund, it was incumbent upon him, as trustee thereof, to protect the same. By so doing he only performed his duty to his trust; and under such circumstances, he cannot be called upon to return the property to the bank or its receiver. We are, therefore, of the opinion that the receiver has a cause of action herein against the appellee Beazley, but that he has no cause of action against the appellee Miller. The district court erred in its ruling.—*Reversed in part; affirmed in part.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.