L. A. ANDREW, Receiver, Appellant, v. JOHN KELLY, Appellee.

No. 41407.

DECEMBER 13, 1932.

Swift, Swift & Elsenbast, for appellant.

Wallace & Claypool, for appellee.

FAVILLE, J.—The North English Savings Bank was organized about 1889. In the years 1927 and 1928 the appellee was a director

in said bank, and had been such for some years. He had also been a depositor in said bank for a number of years, his deposits being represented by time certificates of deposit. Prior to March 2, 1926, the appellee had on deposit in said bank the sum of $2,000, for which he held a certificate of deposit in said bank which was payable in twelve months thereafter. It appears without dispute that on or about March 29, 1927, the appellee transferred said certificate of deposit to one Baird, who was at said time the president of said bank. At said time Baird gave to the appellee his personal note for the principal amount of said certificate, and to secure the payment of said note Baird assigned to the appellee certain shares of stock in a lumber company as collateral. The certificate of deposit was stamped "paid" by the bank and the proceeds were transferred to the checking account of said Baird in said bank. A deposit slip was made showing that said deposit to the account of Baird was the proceeds of the said certificate. The records of the bank showed that after the deposit had been so made in the checking account of Baird, his balance was $6,086.44. It appears that the interest which was due on said certificate at the time the same was transferred to the president of the bank was either paid or credited to the appellee. The note that was given to appellee by Baird was for the principal sum of $2,000, the same as the principal in said certificate of deposit. There is no showing in the record as to what became of the money in the checking account of said Baird after the $2,000 certificate had been credited therein. There is nothing in the record to show that any of the proceeds of said certificate which were so placed in the checking account of Baird were ever transferred to the appellee. It does, however, appear that more than two years after this transaction said note was paid in installments and the payments were deposited in the Williamsburg Savings Bank, of Williamsburg, Iowa. On October 7, 1929, there was deposited in said bank the sum of $800, and on October 23, 1929, $100 and some interest, and on November 30, 1929, the balance of the amount due on the $2,000 note. The Williamsburg Savings Bank had possession of said note for the appellee, and when these payments were made they were endorsed on said note, and when fully paid it was cancelled and returned to Baird.

In a separate division of his petition the appellant seeks to recover on another certificate of deposit which was held by the appellee, in the principal sum of $3,500. It appears that this certifi-

cate was issued on December 29, 1926, and was due twelve months after date. On or about December 31, 1927, it appears that the appellee took said certificate of deposit to the Williamsburg Savings Bank and endorsed and transferred the same to said bank and received therefor a certificate of deposit of the said Williamsburg Savings Bank, payable to the appellee, in the sum of $3,600, and at said time appellee was paid $40 in cash. This new certificate was payable three months after date. The certificate of deposit in the North English Bank which had been so transferred by appellee to the Williamsburg Savings Bank was sent by it to its correspondent, the Cedar Rapids National Bank, which in turn sent the same in the regular course of business to the North English Bank and received a remittance therefor, and said certificate was marked "cancelled and paid" by the North English Bank on January 4, 1928. The certificate which the appellee received from the Williamsburg Savings Bank was paid to him by said bank a year later, to wit, on January 5, 1929. The North English Bank closed May 5, 1928.

It has been exceedingly difficult for us to trace these dates with absolute accuracy, because the statements of counsel in argument do not appear to coincide with the statements in the abstract. However, we find that the foregoing facts are without dispute in the evidence.

A very large amount of evidence was introduced by both parties on the question of the insolvency of the bank at or about the time of the transactions referred to. The evidence covers a detailed examination of the entire assets of the bank, and necessarily leads in its ramifications into testimony respecting the value of the real estate and other securities held by the bank, and also the assets and liabilities of various debtors of said bank. It would be utterly impossible for us to attempt any review of the evidence on the question of the insolvency of the bank, but for the present we shall assume that the evidence was sufficient to warrant a finding that the bank was in fact insolvent at the time of the transactions which are challenged.

Appellant's action is predicated upon our holding in Leach v. Beazley, 201 Iowa 337. That action was brought by the receiver of a closed bank to recover from certain officers and directors of said bank the proceeds of certain moneys which had been withdrawn from said bank. It appeared that the president of said bank was the holder of a certificate of deposit in said bank; that he turned the said certificate of deposit over to the bank and received from

the bank its equivalent in promissory notes then held by and belonging to the bank. In all he thus received thirty-five notes as the property of the bank amounting to approximately $13,300. The situation before us in said case was one where the president of the bank had taken from its assets good commercial paper to the amount of $13,300 and attempted to pay for the same by turning in a certain certificate of deposit and checks upon his open account in the bank. The record disclosed that the bank was insolvent at the time of this transaction, and we found from the evidence that the president knew of its insolvency at the time. After discussing the rules of law pertinent to banking corporations and the relation of such an officer as a president thereto, we said:

"We feel that sound public policy and common fairness forbid that a director or managing agent of a bank overtaken by financial disaster should be permitted to convert their power of management and their intimate knowledge of corporate affairs into a means of protection, to the disadvantage of other creditors."

We held that, under the pleaded facts, substantially as stated herein, recovery might be had against the president of the bank as a trustee.

We held to like effect in Andrew v. Citizens' State Bank of Goldfield, 207 Iowa 386, in which case the president of a bank secured notes the property of the bank as collateral to an indebtedness of the bank under such circumstances that we held he was accountable as a trustee.

The facts of the case at bar are clearly distinguishable from the facts in the two cases cited. In this case the appellee was not an active manager of the bank, but was rather an inactive director therein. Assuming, without deciding, that under the record the bank was insolvent at the time of the transactions referred to and that the appellee as a director in said bank was chargeable with knowledge of such insolvency, even so, under the facts in this case, can the appellee be held to account to the receiver of said bank as a trustee for the proceeds of the certificates of deposit previously described? It is important at this point to note that this action is not predicated in any manner upon fraud or conspiracy. Appellant seeks to charge the appellee as a director-trustee and hold him to account for the funds which it is claimed he secured from the bank. The situation is this: The appellee was the holder of a time certificate issued by

said bank; the certificate was past due and payable according to its terms; payment had not been refused nor had extension of time been asked by the bank. The bank was a going concern. Promptly after the certificate of deposit matured the appellee made an arrangement with the president of said bank whereby he transferred said certificate to the president. The bona fides of this transaction is in no way challenged. The appellee received no funds whatever from the bank. He had a right to sell his certificate of deposit to anyone who would buy it. He did sell and transfer it to the president of the bank, who gave him his note therefor and secured the same by collateral. The proceeds of the certificate were placed in the checking account of the president of the bank and the certificate was duly paid by the bank and cancelled. Strangely, the record is silent as to what the president of the bank did with the funds so deposited in his account. In any event, what the appellee secured was the note of the president of the bank given in exchange for said certificate and which note was thereafter paid in various installments by the president of said bank. Where the funds for the payment of said note came from does not appear in the record, and no claim is made that they came out of the assets of said bank and they are not traced to the bank. The question that confronts us at this point is whether or not, under these facts, the appellee must be held as a trustee for the amount of the certificate of deposit which he so transferred to the president of the bank. Suppose that instead of making the deal with the president of the bank the appellee had transferred the said certificate of deposit to a total stranger and received therefor the note of said stranger which was eventually paid. Without any claim of fraud or conspiracy could it be held that such a transaction would amount to a breach of trust by the appellee, for which he must respond to the receiver of the bank? We think not. So here, the appellee transferred his certificate of deposit to one who was willing to take the same and execute his promissory note therefor and secure the latter by collateral. The note was subsequently paid. If anyone withdrew funds from the bank on this certificate of deposit it was the president of the bank, who caused said funds to be placed in his checking account, but we are concerned here only with the question as to whether or not the appellee shall be charged as a trustee with the amount of the said certificate of deposit. We repeat, there is no allegation or claim of any fraud on the part of the appellee or of any conspiracy between

him and the president of the bank. He assigned the certificate for value, and so far as the record shows he never received a dollar from the assets of the bank either directly or indirectly in payment of said certificate. To hold him as a trustee as to this certificate under the undisputed facts as shown in this case would be stretching the doctrine of the liability of a director of a bank as a trustee to an extent not warranted by our own decisions or by those of any other jurisdiction, so far as we are advised.

The president of the bank paid said note as shown by the record in different installments of various amounts at or about the time said note became due. Also it is to be remembered that some fourteen months transpired after this transaction before the bank closed its doors. During all of said time it was a going concern.

II. The transaction with regard to the second certificate of deposit is, in legal effect, not substantially different from the one we have already considered. The record shows that the appellee had moved or was about to move so that his trading point would be Williamsburg instead of North English. He had a certificate of deposit in the North English Bank. He took this certificate of deposit to the Williamsburg bank and transferred it to said bank and received therefor the certificate of deposit of said bank for an equal amount. The said Williamsburg bank sent the certificate of deposit in due course of business to its correspondent and it was promptly cleared and paid by the drawee bank. The appellee held his certificate of deposit on the Williamsburg bank and after its maturity it was paid. This transaction is in no way impeached as being fraudulent, nor as the result of any illegal conspiracy. Can we say that by this transaction the appellee violated his trust as a director in the North English Bank, and withdrew his deposit from said bank at such a time and under such circumstances and in such a manner as rendered him accountable to the appellant receiver for the proceeds of said certificate of deposit? Again we are compelled to hold, under the record, that there is no fraud either claimed or proven in this transaction. We have assumed at this point, without so deciding, that at the date referred to the bank was in fact insolvent, although a going concern; that is, that the then cash value of its assets did not equal the amount of its total liabilities. But even if this be true, we are of the opinion that the transaction as proven did not render the appellee liable as a trustee to the receiver of the North English Bank. He owned this certificate and he had a right to dispose of it

in the due course of business. He did transfer it to the Williamsburg Savings Bank, which gave him its certificate of deposit for an equal amount. The Williamsburg bank obtained the proceeds of said certificate of deposit from the drawer bank. If payment of said certificate had been refused, or if said bank had closed its doors and could not pay the same, the Williamsburg bank would have been the loser, and not the appellee, for there is no evidence whatever in the record that impeaches in any degree the bona fide of this transaction between appellee and the Williamsburg bank. We are confronted with a situation where there is an attempt to hold the appellee as a trustee for breach of his trust, under a situation where the sum and substance of the transaction is that, having moved to another locality, he exchanged his certificate of deposit in the North English Bank for a new certificate of deposit in the Williamsburg bank, the latter giving full value for the same in the usual course of business, and without any suggestion of fraud or bad faith on its part. We have no disposition to relax the rule laid down by us in the Beazley case and in the Goldfield case, but we find no legal justification for extending the rule so as to hold a director in a bank liable as trustee for the proceeds of certificates of deposit he may have in such bank where the transactions are of the character disclosed by this record, and where there is no impeachment of the transaction in any manner on the ground of fraud or bad faith. It is to be observed that no attempt was made to cash either of these certificates before maturity. No discount was asked or allowed as an inducement to the payment of the same. The transactions were all such as naturally and ordinarily arise in the course of business, and were had at a time when the bank was not impending immediate closing.

Under the record we do not think that a court of equity should require the appellee to now account for the full amount of said two certificates.

The conclusion of the trial court in dismissing the appellant's petition was right, and it is—Affirmed.

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT. and KINDIG, JJ., concur.